SIMON WITMARK, Respondent, *v.* THE NEW YORK ELEVATED RAIL-ROAD COMPANY and Another, Appellants.

*Lease — when a surrender thereof and the acceptance of a new lease is not a surrender of the estate.*

In an action begun September, 1889, to recover damages for injuries caused to property by the erection and maintenance of an elevated railroad, it was shown that in December, 1871, the plaintiff and his brother were possessed of leasehold interests in certain property on Ninth avenue, New York, with the privilege of renewing the leases; that on May 1, 1881, the leases were surrendered and new leases taken out, by which the property affected by this action was leased to the plaintiff, the changes in the leases being made for the purpose of partitioning the property. Between the time when the plaintiff and his brother became the owners of the leasehold interest, and the 1st day of May, 1881, the defendant in this action equipped and put in operation its railroad.

The referee on the trial assessed yearly damages for the operation of the road, and allowed their recovery from September 19, 1883, to March 30, 1893.

It was contended by the defendant that when the old leases were given up and the new ones were taken out, there was a surrender of the leasehold estate created by the old leases.

*Held*, that presumptively the surrender of a written lease by the lessee to the lessor, accompanied by the acceptance of a new lease, effects, as between the parties, a surrender of the estate held under the old lease, but it is a rebuttable presumption;

That such surrender will not be implied against the intent of the parties as manifested by their acts, and that in the case under consideration it was unreasonable to presume that the plaintiff and his brother intended to surrender their estate, and that the transaction of May first was simply to effect a division of the property for the purpose of partition;

That it has long been the policy in this State to permit leases to be surrendered for the purpose of obtaining renewals without terminating the estate created by the original leases.

The lease taken out in 1881 expired in 1890, and a new lease was then taken out under the privilege of renewal.

*Held*, that it was not error to permit the plaintiff to recover damages for the diminished rental value since the last-mentioned date, as the new lease was but a renewal of the former one, under the covenant contained in it.

Where a witness is familiar with the fee and rental value of property in a given vicinity, he may testify to values without being limited to property which has been sold or rented.

APPEAL by the defendants, The New York Elevated Railroad Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of April, 1893.

The New York Hospital now is, and since July 2, 1862, has been, the owner in fee of a tract of land, bounded north by West Twenty-ninth street and west by Ninth avenue, which has been divided into lots. November 30, 1869, the society leased Nos. 324, 326, 328 and 330 Ninth avenue to Henry J. Burchell for twenty-one years from December 31, 1869, which term ended December 31, 1890.

The leases contained covenants binding the lessee to erect buildings on the lots, and the lessor covenanted to renew the leases for two terms of twenty-one years each, at a rent to be agreed on, or, in case of failure to agree, the amount to be fixed by arbitration.

On the 15th of December, 1871, Simon Witmark, the plaintiff, and David Witmark, his brother, became, by mesne conveyances, the assignees of the leases of the four lots before mentioned. The

corner lot, No. 330, is eighteen feet and nine inches wide and each of the others twenty feet wide and all are 100 feet deep. The buildings erected on these lots extend about seventy feet east from the avenue. At some time (the date not appearing) Simon and David Witmark erected a building on the rear of the four lots thirty feet wide and seventy-eight feet and nine inches deep, fronting on West Twenty-ninth street and known as No. 370. By the construction of this building the property was divided into five lots instead of four. In 1881 the brothers desired to partition their leasehold interest, so the four original leases held by them were surrendered, and May 1, 1881, five new ones were taken from the New York Hospital Society for the unexpired term of twenty-one years. Nos. 328 and 330 Ninth avenue and No. 370 West Twenty-ninth street were leased to the plaintiff, and Nos. 324 and 326 Ninth avenue were leased to David Witmark. When the leases of the plaintiff's three lots expired (December 31, 1890) he took renewals for the full term of twenty-one years.

Between December 15, 1871, the date when Simon and David Witmark became the assignees of the four original leases, and May 1, 1881, the date when they surrendered the original leases and took in their stead five new ones, the defendant constructed and put in operation its elevated railway in Ninth avenue. September 19, 1889, this action was begun to recover past and fee damages. The referee assessed the past damages at $144 per year and allowed a recovery from September 19, 1883, to March 30, 1893, the date of the report, and assessed the so-called fee damages at $1,000.

*Sidney Smith*, for the appellants.

*Roger Foster*, for the respondent.

FOLLETT, J.:

The defendant insists that the plaintiff's present estate began May 1, 1881, after the elevated road was in operation, and that he must be deemed to have taken his lease with reference to its existence, and that he is not entitled to injunctive relief for any permanent injury to the easements appurtenant to his estate nor to damages caused by the operation of the road since that date. On and prior to May 1, 1881, Simon and David Witmark were possessed of an estate for years in Nos. 324 to 330 Ninth avenue,

together with the right of renewal for two terms of twenty-one years each under four leases, one for each lot.

On the date last mentioned the four old leases were given up and five new ones were taken in their places, and it is insisted that this amounted to a surrender of the leasehold estate created by the original leases.   A surrender is a falling of a lesser estate into a greater, like an estate for years into an immediate remainder in fee. The estate held by the Witmarks was one which could be extinguished by a surrender to the owners of the remainder in fee. Neither the surrender nor the destruction of the written evidence of the title to an estate effects a surrender of it unless the parties so intend.   A deed or lease is not the estate, but only the evidence of it, and the destruction or surrender of the written instrument does not necessarily effect a surrender of the estate. Presumptively the surrender of a written lease by the lessee to the lessor, accompanied by the acceptance of a new lease, effects, as between the parties, a surrender of the estate held under the old lease, but it is a rebuttable presumption, especially as between third parties, and when there is no ground for the application of the doctrine of estoppel.   (*Van Rensselaer's Heirs* v. *Penniman*, 6 Wend. 571; *Lawrence* v. *Brown*, 5 N. Y. 394–404; *Coe* v. *Hobby*, 72 id. 146; *Abell* v. *Williams*, 3 Daly, 17.)

In *Coe* v. *Hobby* (*supra*) it was said: "A surrender is implied and so effected by operation of law within the statute quoted, when another estate is created by the reversioner or remainderman, with the assent of the termor, incompatible with the existing estate or term.   In the case of a term for years, or for life, it may be by the acceptance by the lessee or termor of an estate incompatible with the term, or by the taking of a new lease by a lessee.   It will not be implied against the intent of the parties, as manifested by their acts; and when such intention cannot be presumed without doing violence to common sense, the presumption will not be supported."

In 1871 the Witmarks paid $52,500 for the leasehold interest in the four lots, and prior to May 1, 1881, they erected on the demised premises a new and valuable building fronting on West Twenty-ninth street, and it is unreasonable to presume that they intended to surrender their estate in the premises without any compensation

whatever. The transaction of May 1, 1881, was simply a division of the premises into five tenements or lots instead of four, for the purpose of enabling the co-tenants to partition their interests as between themselves. The rent reserved by the five leases was the same as that reserved by the four, and the new leases contained the same covenants and conditions as the old ones. The Witmarks did not surrender possession of the premises, and they did not intend to give up their estate created by the original leases, nor did the landlord understand that it was receiving a surrender of the original estate. It has long been the policy of England and of this State to permit leases to be surrendered for the purpose of obtaining renewals without terminating the estate created by the original leases. (4 Geo. II, chap. 28, § 5; 16 Pick. Stat. 255; 2 J. & V. L. of N. Y. 240; 1 R. L. [K. & R.] 144; 1 R. S. 744, § 2.)

From the evidence contained in the record we think that the referee well found as a fact that the lease of May 1, 1881, simply continued the estate created by the leases of November 30, 1869. When a lease has been taken since the construction of the elevated road it is held that it must be presumed that the rent was fixed with reference to the advantages and disadvantages of the road to the demised premises. (*Kernochan* v. *N. Y. E. R. R. Co.*, 128 N. Y. 559.) In this case there is no room for such a presumption, for the ground rent was fixed in 1869, and since that time valuable buildings have been erected on the premises by the Witmarks and their predecessors in the leasehold estate.

No error was committed in receiving in evidence the lease of December 1, 1890, and in permitting the plaintiff to recover damages for the diminished rental value since that date. The new lease was but a renewal of the former one, pursuant to a covenant that it should be renewed, and it continued the original term. (*Gibbes* v. *Jenkins*, 3 Sandf. Ch. 143; *Collett* v. *Hooper*, 13 Ves. 255.)

No error was committed in permitting Marcus Witmark to testify to the valuations placed on Nos. 328 and 330 when the property was divided between the co-tenants. There was no evidence that there was any written contract dividing the property, or that there was any written evidence of the price agreed on.

It is urged that the referee erred in permitting Levy to testify that the value of real estate in the avenues and streets near the

property in question and its rental value had recently advanced. The point of the objection seems to be that the witness should have been required to specify the property to which he referred, and if sold, the prices for which sold, or if rented, the prices at which rented during the period covered, so that the referee might judge whether values had risen or fallen. The witness did point out many pieces of property, stating prices at which they had been sold and the sums for which rented, and clearly showed a sufficient acquaintance with real estate in that vicinity to qualify him to testify as to values. If we should limit the evidence of the value of real estate to actual sales, it would be very difficult if not impossible to establish the value of that which, for a long time, had not been in the market. All doubt of the competency of the witness, and about his familiarity with the fee and rental value of property in the vicinity of the plaintiff's property, was removed by the cross-examination of the defendants' counsel. The rulings challenged by the appellants in respect to the testimony of Beaver and Alexander are entirely unimportant and the evidence admitted could not have affected the result. The referee found that the plaintiff's leasehold estate is subject to a mortgage owned by Jesse A. Marshall, who is not a party to the action. By his conclusions of law he directed that the plaintiff should be required to procure a release of her lien upon the easements on receiving the fee damages. The plaintiff's attorney in entering the judgment neglected to insert an appropriate provision to that effect. It was not necessary for the defendants to appeal to correct the judgment which could have been readily done by a motion. However, the plaintiff committed the first fault.

It seems to us that the judgment should be modified so as to conform to the referee's decision, and, as modified, affirmed, without costs to either party.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment modified so as to conform to the referee's decision, and, as modified, affirmed, without costs to either party.