THOMAS CRIMMINS, Respondent, *v.* THE METROPOLITAN ELEVATED RAILROAD COMPANY and Another, Appellants.

87h    187|
77 AD¹  98|

*Rental damages to real estate from an elevated railroad — when the right of action therefor is in the tenant and when in the landlord.*

Where the lease of property abutting upon a street on which is erected an elevated railroad is made subsequent to the construction of the road the exclusive right of action for rental damages is in the landowner. In such case the rent is presumed to be based upon the reduced value of the property occasioned by the railroad which burdens the landlord with the loss, but where the lease was made before the building of the road the lessee has the right of action. In such case the lessee pays for the full use of the property, is deprived of part of it, and is, therefore, the one injured.

Under a renewal lease, made after but in pursuance of a lease given before the erection of the elevated railroad, and by which the parties are constrained in fixing the rent, terms and conditions of the renewal lease, the right of action is in the lessee because the two terms are treated as the outcome in effect of one continuous lease commencing before the erection of the road.

In an action brought by a tenant of real property against an elevated railway company to recover damages sustained by the operation and maintenance of the elevated road two leases were given in evidence, one made in 1869 for twenty-one years and the other made in 1890 for the same period, the elevated railway having been erected subsequent to 1869 and prior to 1890.

*Held,* that the burden was upon the plaintiff to prove that the lease of 1890 was given in renewal of the lease of 1869, and under provisions contained in such prior lease which so constrained the action of the parties that they were not in a position to negotiate freely with reference to the situation existing in 1890.

Appeal by the defendants, The Metropolitan Elevated Railroad Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 12th day of November, 1894, upon the decision of the court rendered after a trial at the New York Special Term awarding the plaintiff rental damages and enjoining the operation and maintenance of the defendants' elevated railroad unless they pay the amount awarded as fee damages to the real estate in question.

*Julien T. Davies* and *Frederick Allis,* for the appellants.

*Benjamin Yates,* for the respondent.

Parker, J. :

This suit seems to have been prosecuted with the idea that certain facts which ought to have been alleged and proved could be assumed by the court.

The complaint alleges the execution of certain leases, March 1, 1869, by Adam T. Sackett to Thomas and John D. Crimmins, covering certain vacant lots on the southerly side of Sixtieth street for a period of twenty-one years, with privileges of renewal for the further period of twenty-one years each; the erection of buildings thereon by the lessors; an assignment by John D. Crimmins to Thomas Crimmins of his interest therein, and that Sarah E., Clarence, Gertrude T., George E., Helen, T. William and B. Lambert Sackett leased and conveyed to the plaintiff Thomas Crimmins, on the 15th day of April, 1890, the same premises for a period of twenty-one years with the privilege of renewal for two further terms of twenty-one years each. It does not contain any allegation connecting the leases of 1869 with the leases of 1890.

The grantors in the leases are not the same, and the complaint does not allege that the title of the original lessor has become vested in the lessors of the leases of 1890. Nor does it allege that the second leases were made in pursuance of the renewal clause in the leases of March 1, 1869, or that they grew out of them or were connected with them in any manner.

This question was brought to the attention of the court by a motion to dismiss made at the commencement of the trial. But the complaint was not amended, nor was an amendment asked for.

Nor do we find any evidence connecting the leases of 1890 with those of 1869. The leases of 1890 do not recite the execution of former leases by Adam T. Sackett, and the devolution of his title upon the lessors in the leases of 1890. They do not recite any right of renewal covenanted in the former leases, or that the present leases are made in pursuance of such right, or that the new rent has been appraised or fixed under the terms of a renewal clause. No evidence was presented aside from the leases bearing upon these questions.

We may conjecture that the leases of 1890 were renewals of those of 1869 by parties who had succeeded to the title and interest of the lessor of the 1869 leases, but it is neither alleged nor proved that such is the fact.

If the existence of such facts be essential to sustain a recovery for rental damage during the present term, the conjecture of the court will not suffice to accomplish the purpose. They must be proved.

The courts have been called upon to apply the general principle that the right of action belongs to the party who sustains the loss, in a number of suits between lessees of real estate and elevated railroads resulting in the establishment of certain rules.

1. When the lease is made subsequent to the construction of the elevated railroad, the exclusive right of action is in the landlord. This is because the rent is presumed to be based upon the reduced value of the property occasioned by the railroad which burdens the landlord with the loss.

2. The lessee has the right of action where the lease was made before the building of the road. In such case the lessee pays for the full use of the property and is deprived of part of it, and, therefore, is the one injured.

3. Under a renewal lease made after but in pursuance of a lease given before the erection of the elevated railroad and by which the parties are constrained in fixing the rent, terms and conditions of the renewal lease, the right of action is in the lessee. And this is so because the two terms are treated as the outcome in effect of one continuous lease commencing before the railroad and, therefore, within the rule applicable to leases for a term of years made prior to the construction of the elevated railroad. (*Kernochan v. N. Y. E. R. R. Co.*, 128 N. Y. 559; *Kearney v. M. E. R. R. Co.*, 129 id. 76; *Witmark v. N. Y. E. R. Co.*, 76 Hun, 302.)

Having these general rules in mind we see that the lease's of 1890 standing alone and wholly unconnected with any other lease, would deny recovery to plaintiff for rental damage for the present term, for they were made after the railroad was built.

Therefore, it became necessary for the plaintiff to prove, if he could, that the leases of 1890 were not independent renewals, but the renewals provided for by the leases of 1869, which latter leases so constrained the action of the parties that they, or one of them, were not in a condition to negotiate freely with reference to the situation existing in 1890.

This burden the plaintiff did not meet. Indeed his complaint was not so framed as to entitle him to meet it without amendment. It did not allege that the leases of 1890 were renewals of the leases of 1869, the only other leases pleaded. Although it asserted that the lessors were different it contained no allegation that the lessors in the leases of 1890 had succeeded to the title of the lessor in the leases of 1869.

Upon these questions the evidence, as we observed at the outset, is also silent.

As the judgment of a court must be founded on evidence, rather than surmise, the judgment rendered must fall for want of support.

The judgment should be reversed and a new trial granted, with costs to appellants to abide the event.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment reversed, new trial ordered, costs to appellants to abide event.