J. FREDERICK KERNOCHAN, as Sole Acting Trustee under the Will of ALMY T. HICKS, Deceased, Respondent, v. THE MANHATTAN RAILWAY COMPANY, Appellant.

1. ELEVATED RAILROADS — RECOVERY OF RENTAL DAMAGE BY OWNER OF REVERSION. The owner of a reversion, subject to an unexpired ground lease, may recover for damage to rental value from an elevated railroad, constructed after the commencement of the term, for the interval between a subsequent readjustment of rent by arbitrators, pursuant to a provision of the lease which required them to fix a reasonable yearly rent for an ensuing portion of the term, and the date of the trial, in the absence of any evidence to overcome the presumption that the arbitrators considered the existence and probable continuance of the road in fixing the rent.

2. ELEVATED RAILROADS — AWARD FOR FEE DAMAGE. Fee damages, in lieu of an injunction against the maintenance and operation of an elevated railroad, may be allowed to the owner of a reversion, subject to an unexpired term which commenced before the construction of the road, as of the present time rather than as of the date of the expiration of the term, where the rent since the construction of the road has been readjusted, pursuant to a provision of the lease, upon a basis which presumptively excludes the full enjoyment of the easements by the lessee.

3. APPEAL — QUESTIONS OF FACT — UNANIMOUS AFFIRMANCE. Unanimous affirmance by the Appellate Division of the award by the court

below of fee and rental damages, in an action against an elevated railroad company, precludes the Court of Appeals from questioning the amounts allowed.

*Kernochan* v. *Manhattan Ry. Co.*, 17 App. Div. 634, affirmed.

(Argued November 27, 1899; decided January 9, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 24, 1897, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to restrain the defendant from maintaining, or operating, its railway structure in East 42d street, in the city of New York, and to recover the damages which the plaintiff had sustained to his abutting property. The premises affected are situated on the north side of East 42d street, near the corner of Depew place; a short street running north from 42d street and separating the block upon which the premises are situated from the Grand Central Railroad Depot.

In 1875 the property in question, which was then unimproved, together with other properties adjoining it on either side, was leased for the full term of fifty-seven years. The ground rent reserved by the lease upon the whole plot was fixed for the first fifteen years; namely, at the sum of $6,000, for the first year; at the sum of $7,000, a year, for the next seven years and at the sum of $8,000, a year, for the next seven years. The lease then provided: " And for the next twenty-one years a reasonable rent payable quarter yearly as before provided and to be ascertained as hereinafter mentioned," etc. The provision for ascertaining such future rental was that fit and impartial persons should be nominated by the parties, " to determine what would be a reasonable yearly rent for the said piece of ground hereby demised during the then next succeeding period of twenty-one years." When the nominations should be made and all other matters, relating to the contingency of a default in nomination by a party, or to a difference in judgment by the arbitrators, and to the making of a decision, are

stated and require no particular mention. There is the provision that the annual rent to be reserved for the new period shall not be less than that reserved for the last preceding period, and that such rent shall be established with respect to the ground alone, without any addition on account, or in respect of, any buildings which may have been erected thereon. The lessees were required to pay all taxes and assessments and they might, at the termination of the term, or within twenty days thereafter, remove all buildings standing on the demised premises; unless the lessors should, at least six months before the end of the term, signify their intention to purchase them at the just value thereof, to be ascertained in a similar manner to that provided for the ascertainment of future rentals. The parties having been unable to agree in 1890 as to the rental thereafter to be paid, arbitrators were appointed and they fixed the rental for the future term of twenty-one years upon all the demised premises at the sum of $15,000, a year. There was evidence given upon the trial, not necessary to be particularly referred to, which would warrant the inference that $15,000, a year, was the rental value of the plot with the elevated railroad in the street.

At the Special Term, the plaintiff recovered judgment against the defendant for rental damages and, also, as an alternative to an injunction restraining the defendant from maintaining and operating its railroad in front of the plaintiff's premises, the judgment fixed a value to the easements appurtenant to the property, which might be paid by the defendant to the plaintiff for a conveyance to it of the property found to have been taken. The findings of the trial judge were, substantially, that the predecessor of the defendant commenced the construction of its elevated railroad in front of the plaintiff's premises in the year 1877; that the railroad as constructed is a permanent structure ; that the operation of the railroad, from the year 1878 to the present time, was a use inconsistent with street uses; that thereby a portion of the easements of access, air and light, which formed a part of the plaintiff's property, had been taken by the defendant; that by

the taking of such easements the plaintiff, from May first, 1890, down to the date of the trial, had sustained a loss in rental value of said premises, over and above the value of any and all general and special benefit to said premises arising from the construction, maintenance and operation of said elevated railroad in front of them, amounting to the sum of $5,666.66; that the value of so much of the plaintiff's easements, over and above the value of any and all general and special benefit to said premises arising from the construction, maintenance and operation of said elevated railroad in front of them, as were taken by the defendants, was the sum of $20,666.66. From the judgment recovered by the plaintiff at the Special Term, the defendant appealed to the Appellate Division of the Supreme Court, in the first department, where the judgment was unanimously affirmed. The defendant now appeals to this court.

*John F. Dillon, Julien T. Davies* and *Arthur O. Townsend* for appellant. The land in suit being subject to a lease thereof made before the railway was built, and in the actual possession of the lessee, this plaintiff, the reversionary owner, is not entitled to recover for injuries to the use of the land during the continuance of said lease. (*Pappenheim* v. *M. E. R. Co.*, 128 N. Y. 436; *Kernochan* v. *N. Y. El. R. R. Co.*, 128 N. Y. 559; *Winthrop* v. *M. Ry. Co.*, 17 App. Div. 509; *Powers* v. *M. Ry. Co.*, 120 N. Y. 178; *A. B. N. Co.* v. *N. Y. El. R. R. Co.*, 129 N. Y. 271; *Woolsey* v. *N. Y. El. R. R. Co.*, 134 N. Y. 323; *Crimmins* v. *M. El. R. R. Co.*, 87 Hun, 187; *Weed* v. *Weed*, 94 N. Y. 243; *Potter* v. *Town of Greenwich*, 92 N. Y. 662; *Jacobs* v. *Morange*, 47 N. Y. 57.) The learned trial judge erred in compelling defendant to take and pay for a release exposing it to other injunction and damage suits. (*Woolsey* v. *N. Y. El. R. R. Co.*, 134 N. Y. 323.) The learned trial judge erred in obliging defendant to pay future damages for the right to make the noise inevitably necessary for a railway. (*A. B. N. Co.* v. *N. Y. El. R. R. Co.*, 129 N. Y. 252.)

*John M. Bowers* for respondent. The plaintiff, as owner of the fee of the lots in question, is entitled to maintain this action, and to recover all damage occasioned to the land after the 1st day of May, 1890. (*Thompson* v. *M. Ry. Co.*, 130 N. Y. 360; *Kernochan* v. *N. Y. El. R. R. Co.*, 128 N. Y. 559; *Hine* v. *N. Y. El. R. R. Co.*, 128 N. Y. 571; *Mortimer* v. *M. Ry. Co.*, 129 N. Y. 81; *Kearney* v. *M. E. Ry. Co.*, 129 N. Y. 76; *Witmark* v. *N. Y. El. R. R. Co.*, 149 N. Y. 393; *Jesser* v. *Gifford*, 4 Burr. 2141; *Starr* v. *Jackson*, 11 Mass. 518; *Matter of William, etc., Sts.*, 19 Wend. 678; *Tallman* v. *M. E. R. R. Co.*, 121 N. Y. 119.) The evidence as to damages was strictly in accordance with the rules laid down by this court. (*Jamieson* v. *K. C. El. Ry. Co.*, 147 N. Y. 322.) There was sufficient evidence in this case to justify the finding made by the trial court as to rental and fee damages. That finding was unanimously sustained by the Appellate Division, and so is not reviewable in this court. (Const. N. Y. art. 6, § 9; Code Civ. Pro. § 191, subd. 4.)

GRAY, J. This case presents a phase of the elevated railroad litigation in the city of New York, which may be said to differentiate it from preceding cases in a marked respect. The ground lease, in question, antedated the construction of the elevated railroad in the street; ran for one long term of years; carried a fixed rental for only a portion of the term and, immediately upon its making, was built upon by the lessees. The plaintiff's action is based upon the invasion by the defendant of the easements of light, air and access, which were appurtenant to the property, and the date of the commencement of the injury to him by the defendant's road has been fixed as in 1890; in which year the period terminated for which an annual rental for the property had been agreed upon by the terms of the lease and when the rental to be paid for the next succeeding period of twenty-one years was determined by the arbitrators. The theory of the recovery is that the plaintiff, as the owner of the reversion, has been injured

by acts of the defendant, which constitute what for conven-
ience may be termed a trespass upon certain property rights,
and that he is entitled to have the same restrained and to
recover the rental damage sustained since the year 1890. The
appellant contends that the tenants, or lessees, are the only
persons entitled to recover for any damage occasioned by its
trespass during the continuance of their lease and that, there-
fore, the award to the plaintiff of rental damages was erro-
neous. It is also argued in the appellant's behalf with respect
to the sum awarded to the plaintiff as the fee damage, which
might be paid as an alternative to an injunction against the
maintenance and operation of the railroad, that, inasmuch as
the plaintiff had demised the property for a term of fifty-seven
years, it was error to allow a recovery as of the present time,
and that the recovery should have been a sum which would
be equal to the injury to the reversion at the expiration of
the term. The question of the lessor's right of action, under
such a lease as the one before us, was left open in the *Ker-
nochan Case*, (128 N. Y. 559), and has not been expressly
passed upon by this court. (See also *Pappenheim's Case*, 128
N. Y. 436.)

It was the view of the Appellate Division that, by the proper
construction of the lease in question, after the first period of
fifteen years within which the rental was fixed, the rent which
the arbitrators determined should be paid for the ensuing
period of twenty-one years was affected and controlled by the
facts, which appeared at the time with respect to the use of
the street in front of the demised premises. It was there
observed that " Under the terms of this lease it is quite clear
that the arbitrators would not have been justified in awarding
to the plaintiff a sum of money which would include the right
to a free and unobstructed use of the street, when, as a fact,
a corporation under legislative authority had erected a struc-
ture which in effect seriously interfered with the use of the
street by the tenant; especially where such structure was of a
permanent character, and which, under the authority given to
construct it, would outlast the remaining years of the lease."

In approaching the consideration of the question for decision, it may be observed that the unanimous affirmance by the Appellate Division of the judgment has settled conclusively all questions of fact relating to the rental and fee damages and we must here assume that the evidence supported the findings of the trial court in those respects. That the plaintiff had been damaged in the amounts found must be taken to be true and we are confined in our review to the legal question of his right to maintain the action.

There is no principle of law that limits the number of actions which may be brought against a wrongdoer by those who have suffered from his acts. If the wrong is one committed upon the rights of the lessor of property by an injury done to the reversion, he may have his remedy. If it is one which diminishes the enjoyment by the tenant of the possession of premises leased, he, also, may have his remedy. As it was said in the *Hine's Case*, (128 N. Y. 571): "In either case, it is a matter of proof as to the damage sustained by the particular complainant, and neither litigant is the representative of the other in an action of trespass." It was held in the *Kernochan Case*, (*supra*), that the same wrongful act may affect different interests in the same property and give a separate action to the several owners. Lessee and reversioner may each have an action for an injury resulting from the same wrong; each with respect to his particular estate.

The facts of this case introduce the difficulty that the plaintiff had parted with the entire interest in his land for one indivisible term of years and his lessees must be presumed to be in possession of what their lease granted to them. We have the argument that no concurrent right to damages exists against the defendant in the lessor and in the lessee. That, as a general proposition would be true; but the feature of the case, which takes it out of the operation of the rule, is that though the term itself is continuous, the rental to be paid by the lessees was not fixed for the whole term and is made to depend for certain future periods in the term upon the agreement of the parties, or, failing to agree, upon the decision of arbitra-

44

tors. If the rental to be paid for these periods was to be adjusted without regard to the presence in the street of the defendant's elevated railway, but only with respect to the land as it was demised in 1875; if the arbitrators had no right, or authority, to fix the rent upon any other basis than that of an estate demised with unimpaired street easements and, therefore, must be presumed to have so determined, then it must be conceded that the plaintiff could not maintain this action. Neither the *Kearney* case, nor the *Witmark Case* (129 N. Y. 76; 149 *ib.* 393) conflicts with the maintenance of the plaintiff's action; for the questions there determined related to the rights of lessees, who recovered for the diminished rental value of buildings by the taking of the easements. In the *Kearney* case, which the decision in the *Witmark* case followed, a renewal of the lease was made, under provisions in the original lease, and the plaintiff's title was held to be continuous since the time when he became the assignee of the original lease and his rights under the new lease to be but an extension of the rights already acquired. The objection was made that, by taking a renewal after the construction of the road and before the suit, the plaintiff had no right to substantial damages, or to an equitable remedy. What the plaintiff recovered for, according to the opinion, were the diminished value of the building, which had been erected upon the lot when the plaintiff became the assignee of the original lease, and the permanent injury which he, as owner of the building, sustained by the appropriation of the easements which were appurtenant. The plaintiffs, as lessees, in those cases, did not recover for the particular injuries for which the plaintiff has recovered in this case. Those were, also, cases of leases and of improvements made upon the land before the construction of the elevated railway and the renewals were held not to affect the lessees' rights to recover for the injury done to the rental value of their buildings. They recognized that the lessees had a cause of action against the elevated railroad company for the impairment of the urban easements incident to the buildings that had been erected upon the demised property and the

renewals of their leases evidenced the continuance of their title and rights ; which, as it was suggested, they may have been obliged to enter into to preserve existing rights.

The urban easements, belonging to property abutting upon streets, are the rights that one's windows should not be darkened ; that the free enjoyment of pure air should not be substantially interfered with and that the free and usual access thereto should not be impaired. The value of property is affected as these rights are taken, or substantially impaired. As between lessor and lessee the injury from this technical trespass is not the same. The former has his remedy for any injury sustained to his reversionary right and, as well, in a case where the rent to him is presumably lessened from what it would have been in a normal condition of things. He may recover for any loss occasioned to him from the value of the use being incumbered by the elevated railroad in the street. The lessee, or tenant, has his remedy for any injury occasioned to him, according to the circumstances of his hiring. If the hiring preceded the construction of the elevated railroad in the street and is for a term of years at a fixed rental, he is entitled to recover for any injury occasioned thereby, to the extent that his enjoyment and use of the property are affected and the rental value thereof to him is diminished. If he leases after the construction of the elevated railroad, the presumption is that the rent reserved in the lease was governed by the actual situation of the property and the right to recover damages is vested exclusively in the lessor. (*Kernochan* v. *R. R. Co., supra.*) The lessee, or tenant, may, also, conceivably, have a cause of action against the elevated railroad company, which is not based upon the rental value of the property, as for a temporary, or casual, trespass. If he is able to show that, aside from any question of the rental value of the property, he suffers in his enjoyment of his possession from the operation of the railroad in some appreciable manner, his case is quite different from the landlord's. (*Hine Case, supra.*) The defendant is exposed to no danger from a double recovery for damages sustained to the rental value of

leased property; for the right to such must be vested solely either in the lessor, or in the lessee, according to the case. If the lessor is entitled to recover damages for a diminished rental value of the premises, the lessee's, or tenant's, right, also, to recover damages must, naturally, rest upon a different ground and the case must be one where he is able to show that he has suffered an injury to his use which is distinct, in its nature, from that from which the lessor suffers. Such a case may, possibly, find an illustration in the facts before us; where the lessees leased the ground before the construction of the elevated railroad in the street at a fixed rental for the first fifteen years of the term and erected their factory upon it. If, upon the expiration of the first period of fifteen years, the future rent to be paid was presumably fixed, as I shall endeavor to show, for the use of the land in its actual situation, as incumbered by the presence of the railroad structure in the street, then, as the lessees were constrained by the lease to remain, it might be that, while they would have no right to recover damages as for the diminished rental value of the demised premises, they would have a right of action for any injury to the use and enjoyment of their building in the impaired condition of its incidental right to the easements appurtenant to property abutting upon a street. However that may be, we do not, in anywise, pass upon the question and the suggestion is made by way of illustration only.

The case is an exceptional one. The question of the plaintiff's right to maintain his action depends upon the construction, which should be given to the lease, in its provisions relating to the readjustment of the rent to be paid by the lessees after the expiration of the first period of fifteen years. Was it the duty of the arbitrators to fix the rental value of the premises, in 1890, for the "then next succeeding period of twenty-one years," not as they viewed the premises actually, but as they would have viewed them if the elevated structure had not been there? The appellant claims that to be the proper rule and insists upon the legal presumption that the arbitrators so acted. For the first fifteen years of the term,

the rental moneys to be paid were fixed by the lease and for whatever damages were occasioned by the construction and operation of an elevated railroad during that period the tenant of the premises, alone, could recover. That is conceded and it was the principle of the decision of the trial court. It is obvious that the plaintiff sustained no injury thereby, except so far as the reversion may have been affected. But when, at the expiration of that period, in 1890, it became necessary, under the provisions of the lease, to readjust the rent, the situation was that arbitrators were "to determine what would be a reasonable yearly rent for the said piece of ground hereby demised during the next succeeding period of twenty-one years." This language would seem, fairly, to import, as the duty of the arbitrators, that they should exercise their judgment as to a reasonable rent to be exacted of the tenants for the new rental period upon which the parties were about entering. Of course, the demised estate under this lease was all that the lessor could grant in the use of the *res ;* which included all incidental easements. But, if its usable value is diminished, from an obviously changed condition of affairs, due to the acts of the authorities, or of those acting by delegation of the authorities, are the arbitrators not to consider it? Will they not, naturally, be presumed to consider it in viewing the property? They must fairly appraise the value of the land as it stands. All the facts relating to the situation of the property and the facilities for its enjoyment must, necessarily, be considered in determining its value. (*Livingston* v. *Sage,* 95 N. Y. 289.) I think it would be a violent presumption that the arbitrators determined upon the rent to be paid for the premises for the ensuing period of time by valuing their use without the presence of the railroad structure and upon the supposition that it would be removed during the term. The court has found that the defendant's railroad is a permanent structure, and that fact is not disputed by the appellant; which only insists that it was not a fact which was admissible, or which may be legally presumed, to have influenced the determination of the arbitrators in fixing the future rent to

be paid by the lessee. The appellant contends that, by the language of the lease, the arbitrators were to determine the rental value of the demised property as the land was demised in 1875, when the lease was made, and that the rent which the arbitrators were authorized to fix was for the whole estate demised. That is, they assume that the arbitrators had no right or authority under the lease to adjust the rent, and therefore, in legal presumption, they did not adjust it, upon anything else than the whole estate as it was demised in 1875. But, as it seems to me, the language of the lease rather negatives this assumption, when it provides that the arbitrators are "to determine what would be a reasonable yearly rent for the piece of ground hereby demised during the then next succeeding period of twenty-one years." The language is prospective and prescribes that the rent to be determined for the future period "shall be reasonable." I think its clear inference is that the duty of the arbitrators was to determine upon such a ground rent for the succeeding period as, in view of its actual situation upon a street then appropriated to other than ordinary street uses, would be reasaonable, or, under the altered circumstances, just between the parties. The words "hereby demised" are descriptive of the subject of appraisement.

The elevated railroad, with respect to the abutting property owner, is regarded in the light of a trespasser, by reason of its invasion of his easements of light, air and access. But it is lawfully in the street by legislative authority and the illegality of its acts consists in the appropriation of a portion of the easements, without first acquiring them by negotiation, or by condemnation proceedings. (*Sperb* v. *M. E. Ry. Co.*, 137 N. Y. 155.) If the defendant was not unlawfully in the street, but occupied and used it under a charter from the state, it is to be, naturally and fairly, presumed that the arbitrators, in determining upon the future rent to be paid for the property affected, considered the road as a material factor, or circumstance, in the situation. Of course, in legal theory, it was not to be presumed that the illegal conduct of the railroad

company would continue forever.    It was there, however, by authority of law and had built a structure of a permanent nature, and it was not a natural expectation that the structure would be promptly removed, or that the company would not be accorded the right to remain, upon making just compensation for the easements appropriated.    In the situation, the arbitrators would be assumed to have acted upon the supposition that the road would be operated during the new rental period.    It was observed in the *Kernochan Case*, (*supra*), with reference, of course, to the making of a lease after the construction of the railroad, that "it would be an unnatural and violent presumption that the lessor intended to exact, or that the lessee intended to pay, rent measured by the value of the use of the premises without the railroad, on the supposition that it would be removed during the term.    On the contrary, it is undoubtedly true that the rent, reserved in leases like this, represents in the minds of the parties the value of the use of the premises incumbered by the railroad."    It could not be foreseen, when this lease was made, what might, in the future, affect the value of the ground and, hence, we find the stipulation that a reasonable rent should be determined upon by the arbitrators ; which must be taken to mean a reasonable rent in view of its actual situation and the facilities for its enjoyment.    The mode of adjusting the rent by an arbitration was a popular, fair and convenient one and the arbitrators would be presumed to act as men ordinarily would, who were competent and fair business men.

If, then, in the absence of any evidence upon the subject, the arbitrators, as I think should be presumed, viewed the leased property and saw the value of its use to be diminished by the presence of the elevated railroad structure in front of it and fixed, in consequence, a less value upon it for rental purposes than they would have done if the street was subject only to ordinary street uses, the plaintiff has suffered a damage which the defendant is legally liable for. If, where a lease is made at a time subsequent to the construction of the elevated railroad, the lessor recovers damages,

because of the presumption that the rent reserved is based upon the reduced value of the property, the same principle should be applicable to a case like this where, during the lease, the parties have stipulated that the rent to be paid for stated periods shall be determined by the arbitrators. There is a similar presumption that the appraisal for rental purposes is based upon the reduced value of the property.

As to the question of the right of the plaintiff to recover the amount of fee damage which was awarded to him, and which the defendant was required to pay as an alternative to the granting of an injunction, it is sufficient to say that it rests upon the basis that the structure is a permanent one and will remain in the street for and beyond the period of the term of the lease. It is predicated upon the amount of damage which the lessor would sustain by the permanence of the appropriation by the defendant of the easements. It represented the injury to the reversion by the continued loss of ground rent. The rent has been, and will, in all probability, be, fixed upon a basis which contemplates the exclusion of the full use and enjoyment by the lessees of the easements of light, air and access, which were appurtenant to the property, and the value of the reversion to the lessor is affected accordingly.

I think no error has been committed for which the judgment should be reversed and, therefore, that it should be affirmed, with costs.

All concur, except PARKER, Ch. J., not sitting, and O'BRIEN, J., dissenting.

Judgment affirmed.