effect, declared that, in its wisdom, it is impracticable to determine the facts with reference to the previous conviction at the time of imposing sentence. If, therefore, the method and agencies it has provided and employed for the purpose of giving the defendant a hearing in case he disputes the fact as found by the commissioner with reference to a previous conviction should result in his detention beyond the fifth day of his commitment, still we think that was within the legislative discretion. All of these provisions for an earlier discharge than that fixed in the warrant of commitment are for the benefit of the prisoner. No substantial right of the prisoner is invaded. The legislature might have omitted any or all of them. The judicial functions are fully left to the court. The trial, conviction, and sentence are unquestionably legal. The law should not be upset because possibly the commissioner may err in ascertaining the fact with reference to a previous conviction of the prisoner, or because either he or the warden may not promptly and faithfully discharge the duties which the legislature has devolved upon them with reference to bringing about an earlier discharge of the prisoner, depending upon his previous good record. These provisions neither render the sentence void for uncertainty, nor disproportionate to the offense. People v. Illinois State Reformatory, 143 Ill. 413, 36 N. E. 76, 23 L. R. A. 139. We are of the opinion, therefore, that the constitutional objections to the original law have been fully obviated.

It follows that the order should be reversed, the proceedings dismissed, and the relator remanded to the custody of the warden under the warrant of commitment. All concur.

---

(77 App. Div. **94.**)

STORMS et al. v. MANHATTAN RY. CO. et al.

(Supreme Court, Appellate Division, First Department. December 5, 1902.)

1. ELEVATED RAILROAD—CONSTRUCTION—PERSONS ENTITLED TO DAMAGES— LESSEES—RENEWAL LEASE.

A city leased property for 21 years, with covenant of renewal. On the expiration of the lease, which by several assignments had come to plaintiffs, a renewal was executed to her for another 21 years. Pending the original term, an elevated railroad had been constructed in front of the property. *Held,* that plaintiff could recover for the damage to her leasehold therefrom, her title under the renewal lease relating back to the original term, and therefore occurring before the construction of the road.

2. SAME—CONSENT OF LESSOR—EFFECT.

A city which had leased premises to a third party could not thereafter, by consenting to the construction of an elevated railroad in front of the property, deprive the lessee of the right to recover any damage to the leasehold.

3. SAME—REDUCTION OF RENT—EFFECT.

Where property was leased for a specified term, with covenant of renewal on terms to be agreed on by the parties, and the lessee had erected a building on the premises, the fact that the rent for the renewal term was paid with reference to the presence of an elevated railroad in front of the premises, which had been erected during the original term, did not preclude the lessee from recovering for damages to the leasehold.

4. SAME—BREACH OF COVENANT OF LEASE—EFFECT.

The fact that lessees assigned their lease in violation of a covenant against assignments did not preclude the assignee from recovering against third persons for erecting an elevated road in front of the premises, when notwithstanding the assignment the lessors continued to collect the rents, and afterwards executed a renewal to the assignee.

5. SAME—RECOVERY OF DAMAGES—RELEASE.

Where a lessee recovers damages due to the erection of an elevated railroad in front of his property the company is entitled to a release from him, and conveyance of the easement, not merely during the existing term, but during future renewals stipulated for in the lease.

Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from special term, New York county.

Action by Frances J. Storms and Alfred Storms against the Manhattan Railway Company and the New York Elevated Railroad Company. Judgment for plaintiffs, and defendants appeal. Modified and affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Alfred A. Wheat, for appellants.

Eugene D. Hawkins, for respondents.

O'BRIEN, J. Two actions were brought involving the question of damages to the premises Nos. 76 and 78 Park Row, in the city of New York, by reason of the construction and maintenance of defendant's elevated railway. This action involves No. 78 Park Row, which has a frontage of 25 feet and a depth of 96 feet. The necessity of considering to some extent the two actions together arises from the fact that the premises are used together practically as one building, four stories in height, for a hotel, restaurant, and saloon business, and have so been used since 1871. The construction of the elevated railroad in front of the property was commenced in 1878, and the road was completed and put in operation in 1879. The premises were leased by the city of New York on May 1, 1872, to Francis J. Leggett for a period of 21 years, at $1,375 a year rent, the lease containing a covenant of renewal upon terms to be agreed upon by the parties, or determined by two appraisers, or by an umpire, should the appraisers disagree. On the expiration of this lease, which by mesne assignments came to the plaintiff Frances Storms, a renewal lease for 21 years from May 1, 1893, was executed to her. On September 7, 1875, the city of New York gave its consent to the construction and operation of the elevated railroad in front of the property.

The appellants insist that the plaintiffs were not legally entitled to any award; and, if in error in this, then that the amounts awarded as damages are excessive. The sum awarded as damage to the leasehold was $2,750, and the past damages were fixed at the rate of about $400 per year. Thinking, as we do, that there was evidence to support the amounts awarded, we do not think it necessary to

¶ 4. See Eminent Domain, vol. 18, Cent. Dig. § 775.

discuss the subject further, or to interfere with the conclusions reached by the judge at special term.

The more serious questions bear upon the right of the plaintiffs to relief of any kind, and these it will be necessary to briefly consider. It is insisted that the plaintiffs have no title to the easements in the street, as these easements had been extinguished by the city of New York prior to the lease under which plaintiffs claim; and the authority relied upon for this proposition is the case of Herzog v. Railway Co., 76 Hun, 486, 27 N. Y. Supp. 1034. The distinction to be noted, however, between that case and the case at bar, is evident. In the Herzog Case the city, as owner of the premises, prior to its conveyance to the plaintiffs, had given its consent to the operation of the elevated railway. In this case the original lease from the city to Leggett was given in 1872, prior to the city's consent to the elevated railroad; and the present lease is a renewal of that lease, given pursuant to the covenant of the city to renew upon the determination of the ground rent in the manner specified.

The case of Kearney v. Railway Co., 129 N. Y. 80, 29 N. E. 70, based on this difference in the evidence between the two cases and showing that a different principle is applicable, we regard as decisive of the question. Therein, as here, it appeared that a lease was made with the privilege of renewal, and, before the renewal lease was executed, the road had been built; and there also the point was made that, as the plaintiff took the lease of the premises after the construction of the road, he had no right to subsequent damages or to equitable relief. As stated in the opinion in that case:

"The first point ignores the fact already pointed out that plaintiff's title accrued in 1866, and before the construction of the road. The lease of 1884 cannot be deemed a new or voluntary arrangement, but a continuation of the lease of 1863, which the plaintiff may have been obliged to enter into in order to preserve his existing rights. The plaintiff's rights under the lease of 1884 are but an extension of the rights acquired under the lease of 1863. He was, for all the purposes of this case, the absolute owner of the building since 1866, and we perceive no reason why he was not entitled to recover such sum as represented its diminished rental value in consequence of the construction and operation of the defendant's railroad. This is not the case of a tenant under a lease made after the road was built suing for an injury to his possession, but an owner under title acquired before that time seeking to recover for loss of rents. As such owner of the building he could also recover such permanent injury as he sustained by the appropriation by the defendants of such easements as were taken and were appurtenant to the house and a part of it."

In the case at bar the plaintiffs were the owners of the building, and the destruction of part of the easements in front thereof, which were appurtenant to both the lot and building, necessarily damaged the plaintiffs; and the existence of the lease deprived the city of the right to strip the premises of any of these appurtenant easements as long as its lessees had the right of renewal. The Kearney Case, supra, would concededly be a controlling authority, were it not that in that case there was no formal consent by the owner of the lot to the construction of the road. The giving of such a consent, however, could not be effective as against the rights of the tenant for the reason that while the lease was outstanding, and with a right to renewal which

created in effect a continuous term, the city had no power, as against the tenant, to strip the premises of these easements. As correctly urged by the respondent:

"While the lease is in force neither the title nor the possession, legal, equitable, or actual, is in the city, but in the lessee. Any consent the city may have given the defendants subsequent in date to this lease was subject to the rights of the lessee thereunder, or under any continuance or extension of these rights by virtue of any right to the same given by that lease."

The appellant's second contention is that the plaintiffs have suffered no damage, the rent reserved in the lease of 1893 having been fixed with reference to the fact of the presence of the elevated railroad in front of the premises. This contention has been frequently urged against purchasers of the fee of property after the road was constructed; but even in cases where it appeared that, because of the elevated road, they paid a smaller price, they were allowed to recover damages. Korn v. Railroad Co. (Sup.) 15 N. Y. Supp. 10; Werfelman v. Railroad Co., 16 Daly, 355, 11 N. Y. Supp. 66; Sterry v. Railroad Co., 129 N. Y. 619, 29 N. E. 68; Pappenheim v. Railroad Co., 128 N. Y. 436, 28 N. E. 518, 13 L. R. A. 401, 26 Am. St. Rep. 486. And in regard to a lessee, this question was considered in Day v. Railroad Co., 3 Misc. Rep. 616, 23 N. Y. Supp. 179, and Crimmins v. Railroad Co., 87 Hun, 187, 33 N. Y. Supp. 984.

Apart, however, from these decisions, we think the reasons which should permit of recovery of damages in favor of a lessee who under the terms of a lease was obliged to take a renewal after the road was constructed are much better and stronger than those which would sustain a recovery in favor of a purchaser who buys after the road is constructed, and, in consequence, obtains the property at a lower price, because we know that where a tenant has established a business with its good will depending to a great extent upon its location, and has erected upon the lot a building, he is to some extent in the hands of his landlord, and must, if he desires to reap the fruits of his industry, accept the renewal lease on the best terms he can obtain. We again advert to the fact that the plaintiffs here owned the building, and all that could have been considered in fixing the rent to be paid in the renewal lease would be the injury inflicted upon the lot.

The defendant's third contention is that plaintiffs have failed to show ownership because of the covenant in the original lease from the city against assignments, and the assignment, without the city's consent, to the plaintiff Alfred Storms. The evidence shows, however, that the city consented to several assignments before the alleged assignment to Alfred Storms; and, furthermore, we do not think that the defendants, who are trespassers, are entitled to take advantage of the covenant, whatever might be the rights of the city. McAdam, Landl. & Ten. (Ed. 1900) § 239, supports the respondent's contention that, if the landlord, under a lease containing a covenant against assignments without his consent, gives a consent to one assignment, the covenant against assignments is satisfied, and subsequent assignments can be made without his consent. Such assignment, in any event, did not render the lease void, but only created a situation

under which the landlord could, by taking advantage of it, re-enter. This, however, the city has not done, but, on the contrary, it appears that the assignment was made in 1882, since which time the city has received the rent for fully 20 years, and in 1893 granted a renewal lease to the plaintiff who was the assignee of the original lease.

The fourth point urged by the appellants, that the court erred in compelling them to take and pay for a release exposing them to other injunction and damage suits, is well taken. In return for the amount required to be paid, the defendants, by the judgment, were to receive only a release and conveyance of the easements, and the right to operate their road until May 14, 1914,—that date marking the expiration of the present renewal lease. As the plaintiffs' right to damages rests upon the theory that the former lease and the present lease constitute a continuous estate, it would seemingly follow that any subsequent renewals under the terms of the lease would be but a continuation of the old and not the creation of a new estate. Taking the plaintiffs' demand for judgment, and defendants' answer, under which both sought for equitable relief similar to what would be obtained by the award of commissioners in condemnation proceedings, we think that upon obtaining, as the plaintiffs have in this action, the equivalent in damages, the defendants are entitled to receive a complete title to the easements which the plaintiffs claim were impaired or destroyed. It follows that the defendants should obtain all the plaintiffs' rights in and to the easements not limited by the present lease, but extending to any renewals.

We think the judgment should therefore be modified by striking out the limitations as to time, and requiring the plaintiffs to give, upon obtaining the sums awarded, a release and conveyance of all their easements arising by virtue of the present lease, or any renewals thereof, in the streets affected by the railroad.

Judgment modified accordingly, and as so modified affirmed, without costs.

PATTERSON and LAUGHLIN, JJ., concur.

McLAUGHLIN, J. (dissenting). I cannot concur in the views expressed in the prevailing opinion. The facts bring the case, as it seems to me, clearly within the principle laid down in Kernochan v. Railway Co., 161 N. Y. 339, 55 N. E. 906, and, if I am correct in this, then the judgment should be reversed.

On the 1st of May, 1872, the premises in question were leased by the city of New York to Francis J. Leggett for a period of 21 years. The lease contained a covenant to the effect that, at the expiration of the term the lessee, "his executors, administrators, and assigns" had the privilege of renewal, upon such terms and conditions as might then be agreed upon. The words of the lease, so far as the same related to renewal, were as follows: That it "shall be upon such rents and other terms and conditions as shall be agreed upon between the parties, or as shall be determined by two sworn appraisers, one of whom to be chosen by each of the said parties, or shall be deter-

mined by a sworn umpire, who shall be chosen by such appraisers in case they cannot agree, unless the said premises, or some part of it, shall, at the expiration of said term hereby demised, be required for public purposes, in which case said term shall not be renewed." On the expiration of the lease, a renewal lease for 21 years from May 1, 1893, was executed to Frances J. Storms, one of the plaintiffs, and she and her husband, the other plaintiff, now hold all of the interest for which the award of damages in this case has been made. In 1875 the city of New York gave its consent to the construction, maintenance, and operation of an elevated railroad in front of the premises described in the complaint, and in pursuance of which the elevated railroad, which it is claimed caused the plaintiffs' damage for which the award has been made in this action, was completed in 1879, and has since been operated. It was in operation when the plaintiffs took the new lease of 1893. The rent was then fixed by agreement between her and the sinking fund commission, the representatives of the city of New York, and, in the absence of evidence to the contrary, it must be assumed that, if the construction, maintenance, and operation of the defendants' railroad injured the leasehold interest, that fact was taken into consideration in fixing the rent; in other words, if the defendants' road had damaged the property, the rent was fixed at a lower figure than it otherwise would have been. I say this must be assumed in the absence of evidence to the contrary, because it is the only natural conclusion which can be drawn from the acts of intelligent persons. Intelligent people do not pay an increased rental of real estate for the purpose of recovering prospective damages in an action to be thereafter brought, and, if this should be done, it might then well be seriously questioned whether a court of equity would permit its powers to be exercised for the purpose of permitting an agreement of that kind to bear fruit. The Kernochan Case is much like this one. The reason there assigned for a reversal of the judgment necessarily leads to a reversal here. Judge Gray, during the course of the opinion delivered in that case, said:

"But when, at the expiration of that period, in 1890, it became necessary, under the provisions of the lease, to readjust the rent, the situation was that arbitrators were 'to determine what would be a reasonable yearly rental for the said piece of ground hereby demised during the next succeeding period of twenty-one years.' This language would seem fairly to import, as the duty of the arbitrators, that they should exercise their judgment as to a reasonable rent to be exacted of the tenants for the new rental period upon which the parties were about entering. Of course, the demised estate under this lease was all the lessor could grant in the use of the res, which included all incidental easements. But if its usable value is diminished from an obviously changed condition of affairs, due to the acts of the authorities, or of those acting by delegation of the authorities, are the arbitrators not to consider it? Will they not naturally be presumed to consider it in viewing the property? They must fairly appraise the value of the land as it stands. All the facts relating to the situation of the property and the facilities for its enjoyment must necessarily be considered in determining its value. Livingston v. Sage, 95 N. Y. 289. I think it would be a violent presumption that the arbitrators determined upon the rent to be paid for the premises for the ensuing period of time by valuing their use without the presence of the railroad structure, and upon the supposition that it would

be removed during the term. The court has found that the defendants' railroad is a permanent structure, and the fact is not disputed by the appellant, which only insists that it was not a fact which was admissible, or which may be legally presumed to have influenced the determination of the arbitrators in fixing the future rent to be paid by the lessee. * * * If, where a lease is made at a time subsequent to the construction of the elevated railroad, the lessor recovers damages because of the presumption that the rent reserved is based upon the reduced value of the property, the same principle should be applicable to a case like this, where during the lease the parties have stipulated that the rent to be paid for stated purposes shall be determined by arbitrators. There is a similar presumption that the appraisal for rental purposes is based upon a reduced value of the property."

I am of the opinion that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

VAN BRUNT, P. J., concurs.