FRANCES J. STORMS et al., Respondents, *v.* THE MANHATTAN RAILWAY COMPANY et al., Appellants.

1. ELEVATED RAILROAD — RIGHT OF RENEWAL LESSEE OF ABUTTING LOT AND OWNER OF BUILDING ERECTED THEREON BEFORE CONSTRUCTION OF ROAD TO DAMAGES AND EQUITABLE RELIEF. Where the estate in abutting premises of the plaintiffs in an action against an elevated street railroad for an injunction and damages originated in the lease of a lot which was practically perpetual, with periods for renewal and readjustment of rental, executed by the city of New York before it consented to the construction of the road, and the original lessee erected a building upon the lot, and the lease together with the building was sold and assigned after the commencement of the operation of the road, by mesne conveyances to the plaintiffs, and was renewed as stipulated therein, the plaintiffs are not deprived of their right to damages

for the impairment of the easements appurtenant to the leasehold property and to equitable relief upon the ground that when the renewal was made the defendant's road was built and in operation, since plaintiffs are the absolute owners of the building and the easements appurtenant thereto, the title to which was acquired by them and their assignors at the commencement of the original lease before the construction of the road, and the renewal into which they were constrained to enter in order to preserve existing rights is a mere continuation thereof, creating no new but simply preserving an existing tenancy.

2. PRESUMPTION THAT RENTS WERE FIXED WITH REFERENCE TO PRESENCE OF ROAD INAPPLICABLE. Under such circumstances there can be no presumption that the rents reserved in the renewal lease were fixed with reference to the presence of the elevated road, and, therefore, the plaintiffs have suffered no damage, since being the lessees and owners of the building, to which the lessor never had any title, and in which it never had any interest, and which it could not and did not attempt to rent to the plaintiffs, they are entitled to recover the damages sustained to the easements appurtenant thereto. The case of *Kernochan* v. *Manhattan Railway Co.* (161 N. Y. 339), discussed and held inapplicable.

*Storms* v. *Manhattan Ry. Co.*, 77 App. Div. 94, affirmed.

(Argued March 17, 1904; decided May 31, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 15, 1902, modifying and affirming as modified a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Julien T. Davies, Theodore L. Waugh* and *Charles A. Gardiner* for appellants. The plaintiff is not entitled to maintain this action because her ownership of the lease accrued at a time when defendant's structure was in the street, operating as at present, because she sues as owner of a lease made since that time with rent fixed in accordance with the conditions now existing and has suffered no damage. (*Kernochan* v. *N. Y. E. R. R. Co.*, 128 N. Y. 559; *Kernochan* v. *M. Ry.*, 161 N. Y. 339; *Crimmins* v. *M. E. R. R. Co.*, 87 Hun, 188.) The grant by the city of a right to appropriate

and use the easements required for an elevated railway in front of this property extinguished any right of action against the railway for such appropriation. Plaintiff's remedy, if injured, is against her landlord. (*Herzog* v. *N. Y. El. R. R. Co.*, 151 N. Y. 665 ; 76 Hun, 486 ; *Ward* v. *M. E. R. Co.*, 152 N. Y. 39 ; *White* v. *M. R. Co.*, 139 N. Y. 19 ; *Heimburg* v. *M. R. Co.*, 162 N. Y. 352; *Lounsbery* v. *Snyder*, 31 N. Y. 514; *Mack* v. *Patchin*, 42 N. Y. 167; *Robinson* v. *Kilvert*, L. R. [41 Ch. Div.] 38.)

*Eugene D. Hawkins* and *Edward W. S. Johnston* for respondents. That plaintiff Frances J. Storms holds the land in suit under a renewal ground lease, the rent in which was fixed after the construction of the elevated road in front of the premises, does not raise a presumption that plaintiff as such lessee and as owner of the building has suffered no damage to her possession and enjoyment of the building by reason of the presence of the elevated road. (*Kernochan* v. *N. Y. E. R. R. Co.*, 128 N. Y. 559; *Kearney* v. *M. E. R. Co.*, 129 N. Y. 76; *Wetmark* v. *N. Y. E. R. R. Co.*, 149 N. Y. 393; *Hine* v. *El. R. Co.*, 128 N. Y. 571.) The rights of defendants in the street, obtained by the consent of the city, are subordinate to plaintiff's easements of light, air and access. (*Pappenheim* v. *El. R. Co.*, 128 N. Y. 446; *Tallman* v. *El. R. Co.*, 121 N. Y. 119; *Foote* v. *El. R. Co.*, 147 N. Y. 374; *Blythe* v. *Pratt*, 62 Miss. 707; *B. & O. R. Co.* v. *Thompson*, 10 Md. 76.)

Martin, J. Appeal from a judgment of the Appellate Division in the first department, modifying the judgment of the Trial Term by requiring the plaintiffs to release to the defendants not only any rights they may have under the present lease, but also any rights they may acquire by reason of a renewal thereof, and as thus modified, affirming the judgment entered upon a decision of the Special Term.

The plaintiff Frances J. Storms, as the owner of the building situated upon the premises in question, and her husband

as sub-tenant, brought this action to restrain the operation of the defendants' road in front of such building and to recover damages therefor.    The city of New York owns the land upon which the plaintiffs' building stands.    On May 1, 1872, it leased the lot in question to Francis A. Leggett for the period of twenty-one years.    This lease contained covenants by which the city was bound to renew the lease for the further period of twenty-one years, with a like covenant for future renewals upon such rent as should be agreed upon by the parties, or as should be determined by appraisers, or an umpire to be chosen by the appraisers, unless the land should be actually required for public purposes by the city of New York.

In April, 1878, the executors of Leggett assigned the lease to one Place, who, a day or two subsequent, assigned it to one Woodworth.    In January, 1882, the latter assigned it to the plaintiff Frances J. Storms.    All these assignments were with the consent of the city.    At the expiration of the lease on May 1, 1893, the city, under the provisions in the lease, renewed it for the period of twenty-one years from that date, executing to the plaintiff Frances J. Storms a renewal lease containing a covenant for future renewals, under which her title to the building upon the premises and to the use of the land was continued.

In 1875 the proper local authorities of the city of New York having control of its streets gave consent to the defendants to construct their road in certain streets in the city, among which was the street upon which the lot in question abutted.    The defendants' road was not completed until the early part of 1879.    Prior to that time a building had been erected upon the lot in question by Leggett, and since its erection it has been continuously used as a hotel.    Under the provisions of the various assignments of the lease the ownership of the building and of all the appurtenances thereto was in terms conveyed to the several assignees of the lease, and ultimately vested in the plaintiff Frances J. Storms.    Therefore, at the time of the consent by the city to the building of the defendants' road the city owned the fee of the land, but

Leggett, to whose title the plaintiff Frances J. Storms succeeded, was the owner of the building.

Upon these facts, together with proof of the injury to such building sustained by Frances J. Storms, the Special Term found that the plaintiffs were entitled to recover $4,153.31 for the trespass upon such easements, and for future damages $2,750. Upon appeal to the Appellate Division the judgment of the Special Term was modified in the manner heretofore stated, and as modified affirmed. The learned Appellate Division has held that the evidence was sufficient to support the amounts awarded, and that the conclusions of the learned trial judge were justified by the evidence. In that we concur.

The only question which was regarded as at all serious by the court below, and practically the only question presented for determination by us, is whether the plaintiffs were entitled to any relief of the character awarded in this case. In discussing that question the court below referred to its decision in *Herzog* v. *N. Y. Elevated R. R. Co.* (76 Hun, 486), which was affirmed by this court upon the opinion below (151 N. Y. 665), but distinguished that case from the case at bar and held that it had no application here. The distinction relied upon by that court was that in the *Herzog* case the city had parted with its right to such easements anterior to the making of the lease under which the plaintiff in that action claimed ; while in the case at bar the original lease from the city was given prior to the time of the city's consent, and the present lease was a renewal given pursuant to the covenant of the city to renew upon the determination of the rent in the manner specified in the lease. The doctrine of the *Herzog* case may be doubted, if in that case the consent referred to was merely the consent given by the local authorities having control of the street, as required by the Constitution and statutes. If that was the character of the consent relied upon, can it be properly held that such a consent transferred any right to the railroad company to invade or interfere with the rights of the city as the owner of premises abutting upon the street where

32

such railroad was constructed? The act of the local authorities in consenting to the construction of the defendants' railroad in the street was a mere governmental act of the city, and not an act in relation to its property, or to any special property, the ownership of which was in the city and bounded upon the street. But, however, it is unnecessary to decide that question at this time, for if we assume that such would be the effect of the general consent as to the city, if given before its lease to the plaintiffs or their assignors, it certainly could not affect the rights of the latter who had acquired a prior and independent right to the use of the lot under a perpetual lease and an absolute title to the buildings which had been erected thereon.

When, in 1872, the lease from the city to Leggett was given, no consent of the city to the erection of the defendants' road had been obtained, and as the plaintiffs' present lease is a mere renewal or continuation of that lease given in pursuance of the covenant of the city to renew, the plaintiffs have succeeded to all the rights of the original lessee, which includes the right to the easements of light, air and access appurtenant to the premises when the original lease was given. That the original lessee obtained, by virtue of his lease, a right to such easements, there can be no doubt. That lease, together with the building on the premises, was sold and assigned by mesne conveyances to the plaintiffs by instruments which specially transferred to each assignee all and singular the premises mentioned and the buildings thereon, with the appurtenances thereto. Thus there was conveyed to the plaintiffs the buildings upon the premises with the right to the use and enjoyment of the same, and all their appurtenances. By these transfers the plaintiffs became the owners and possessed all the rights to the premises and the easements therein which were vested in the original lessee at the time the first lease was made.

But it is contended by the appellants that when the lease of 1893 was made by the city to the plaintiffs, which was after the defendant's road was built and in operation, they

acquired no right to subsequent damages or to equitable relief, but that the effect of such renewal was the same as it would have been if the original lease had been taken at that time and there had been no buildings thereon. We do not see how this position can be maintained. It entirely ignores the fact that the plaintiffs' title originally accrued in 1872, before the construction of the road, and that the lease of 1893 was not a new or voluntary arrangement for the continuation of the former lease, as the plaintiffs were obliged to enter into it in order to preserve their existing rights. The plaintiffs had taken a conveyance of the building which had been erected thereon, in which a business had been established and carried on for many years, so that in order to preserve the good will of the business and their rights under the lease and conveyance, Mrs. Storms was in effect compelled to renew the lease. The plaintiffs' rights under the lease of 1893 were but a continuation of the rights which were acquired under the lease of 1872. The plaintiff Mrs. Storms, for all the purposes of this case, was the absolute owner of the building, and she and her assignors had been such owners since 1872. By that lease and its assignments they and each of them acquired the right to the use of the property which was the subject of the lease, and also to the title to the buildings erected thereon, including the right to enjoy the easements appertaining thereto as they existed when the original lease was given. This is not a case of a tenant under a lease made after the road was built suing for an injury to the possession, but of an owner under a title acquired before the road was built seeking to recover for a loss or injury to the building erected thereon. As such owner Mrs. Storms could recover for such permanent injury as she sustained in consequence of an appropriation by the defendants of such easements as were taken and were appurtenant to the house and a part of the premises. This principle was expressly held in *Kearney* v. *Metr. E. R. Co.* (129 N. Y. 76). In *Kernochan* v. *N. Y. E. R. R. Co.* (128 N. Y. 559) the same principle was recognized, and it was there said that where a lease was executed prior to

the construction of the road, the lessee was the party entitled to maintain the action.

Again in *Witmark* v. *N. Y. Elevated R. R. Co.* (149 N. Y. 393), where the estate in abutting premises of the plaintiff originated in a lease with covenants for renewals executed before the construction of the road, it was held that the fact that the plaintiff had taken a new lease after the construction of the road did not deprive him of the right to relief where it appeared that, by the intention of the parties, the new lease was a continuation of the original, and secured to him all the rights conferred thereby. (See, also, *Fries* v. *N. Y. & Harlem R. R. Co.*, 169 N. Y. 270, 280.)

The appellants also claim that the plaintiffs have suffered no damage, as the rents reserved in the lease of 1893 must have been fixed with reference to the presence of the elevated road in front of the premises. This contention is not new, but has been several times raised against purchasers of the fee of the property after the road was constructed.

In *Pappenheim* v. *Metr. E. R. Co.* (128 N. Y. 436) this court held that where the owner of property affected by such illegal structure sells and conveys the absolute fee, the vendee takes it with all the easements appurtenant to the premises, and all the rights of a general owner, and these may not be interfered with without compensation, and so he may maintain an action to recover damages accruing after his purchase, or to restrain the continuance of the trespass.

The principle of that case was expressly recognized and affirmed in *Kernochan* v. *N. Y. E. R. R. Co.* (128 N. Y. 559, 568), and the same doctrine was held in *Sterry* v. *N. Y. Elevated R. R. Co.* (129 N. Y. 619), where the *Pappenheim* case was expressly recognized, and the decision in that case and in the *Kernochan* case in the same volume was reaffirmed. (See, also, *Korn* v. *N. Y. El. R. R. Co.*, 39 N. Y. St. R. 322, and *Werfelman* v. *Manhattan Ry. Co.*, 16 Daly, 355.)

In *Crimmins* v. *Met. Elevated R. R. Co.* (87 Hun, 187) the precise question involved in this case was under consideration, and it was held that under a renewal lease, made after

but in pursuance of a lease given before the erection of the elevated road, and by which the parties are constrained in fixing the rent, terms and conditions of the renewal lease, the right of action is in the lessee because the two terms are treated as the outcome in effect of one continuous lease commencing before the erection of the road, and this conclusion is based upon the principle of the *Kernochan, Kearney* and *Witmark* cases.    The same doctrine was held in *Day* v. *N. Y. E. R. R. Co.* (3 Misc. Rep. 616), and followed in the case at bar.

The appellants, however, seem to rely with great confidence upon the decision of this court in *Kernochan* v. *Manhattan Railway Co.* (161 N. Y. 339, 345).    The head note in that case is as follows : " The owner of a reversion, subject to an unexpired ground lease, may recover for damage to rental value from an elevated railroad, constructed after the commencement of the term, for the interval between a subsequent readjustment of rent by arbitrators (pursuant to a provision of the lease which required them to fix a reasonable yearly rent for an ensuing portion of the term), and the date of the trial, in the absence of any evidence to overcome the presumption that the arbitrators considered the existence and probable continuance of the road in fixing the rent."    In that case the provision as to annual rent to be reserved under the new period was required to be established as to the ground rent alone, without any addition or account with respect to the title to any buildings which may have been erected thereon, the title to which was in the lessee.    There the contention of the appellant was that the tenants or lessees were the only persons entitled to recover any damages occasioned by its trespass during the continuance of the lease, and, hence, that the award of damages to the plaintiff was erroneous.    The lease was for a period of fifty-seven years, with a provision for ascertaining future rentals.    The discussion by Judge GRAY in that case took a somewhat broad range and was doubtless intended to state many of the general principles applicable to a case of this kind.    It is there said : " There is no principle of law that limits the number of actions which

may be brought against a wrongdoer by those who have suffered from his acts. If the wrong is one committed upon the rights of the lessor of property by an injury done ·to the reversion, he may have his remedy. * * * As it was said in the *Hine's Case* (128 N. Y. 571): 'In either case, it is a matter of proof as to the damage sustained by·the particular complainant, and neither litigant is the representative of the other in an action of trespass.' It was held in the *Kernochan Case* (*supra*) that the same wrongful act may affect different interests in the same property and give a separate action to the several owners. Lessee and reversioner may each have an action for an injury resulting from the same wrong; each with respect to his particular estate." After reviewing the *Kearney* and *Witmark* cases, the judge adds: "The urban easements, belonging to property abutting upon streets, are the rights that one's windows should not be darkened; that the free enjoyment of pure air should not be substantially interfered with· and that the free and usual access thereto should not be impaired. The value of property is affected as these rights are taken, or substantially impaired. As between lessor and lessee the injury from this technical trespass is not the same. The former has his remedy for any injury sustained to his reversionary right, and, as well, in a case where the rent to him is presumably lessened from what it would have been in a normal condition of things. He may recover for any loss occasioned to him from the value of the· use being incumbered by the elevated railroad in the street. The lessee, or tenant, has his remedy for any injury occasioned to him, according to the circumstances of his hiring. If the hiring preceded the construction of the elevated railroad in the street, and is for a term of years at a fixed rental, he is entitled to recover for any injury occasioned thereby, to the extent that his enjoyment and use of the property are affected and the rental value thereof to him · is diminished. If he leases after the construction of the elevated railroad, the presumption is that the rent reserved in the lease was governed by the actual situation of the prop-

erty and the right to recover damages is vested exclusively in the lessor. (*Kernochan* v. *R. R. Co., supra.*) The lessee, or tenant, may, also, conceivably, have a cause of action against the elevated railroad company, which is not based upon the rental value of the property, as for a temporary, or casual, trespass. If he is able to show that, aside from any question of the rental value of the property, he suffers in his enjoyment of his possession from the operation of the railroad in some appreciable manner, his case is quite different from the landlord's. * * * If the lessor is entitled to recover damages for a diminished rental value of the premises, the lessee's, or tenant's, right, also, to recover damages must, naturally, rest upon a different ground and the case must be one where he is able to show that he has suffered an injury to his use which is distinct, in its nature, from that from which the lessor suffers." The learned judge then supposes practically the case at bar, and says that as the lessees were constrained by the lease to remain, it might be that, while they would have no right to recover damages as for the diminished rental value of the demised premises, they would have a right of action for any injury to the use and enjoyment of their building in the impaired condition of its incidental right to the easements appurtenant to property abutting upon a street. He then proceeds to demonstrate that in that particular case the readjustment of the rents to be paid was based upon the condition of the property at the time of such readjustment, and, hence, that the owner was entitled to recover for the injury to the easements appertaining to the land and not the lessee or tenant. With this last conclusion, which was practically the only question in that case, we have in this nothing whatever to do. The question here is not as to the injury to the rental value of the fee of the mere naked land, but relates to the building, the title to which rests in the plaintiffs, and the action is to recover for their injury to the possession and enjoyment of such building under their title and right to maintain it under the lease. This claim is quite different and entirely independent of that of a landlord who merely claims

for an injury to his reversion or for diminution in the rental value of the land itself. In the case at bar the original lessee procured a lease of the premises before the erection of the defendants' road and erected a building thereon in which a continuous business was established and has been maintained until the present time. Subsequently this lease was transferred to the plaintiffs, under and by virtue of which Mrs. Storms acquired an absolute title to the building and lease, which contained a covenant of perpetual renewal, subject only to the exception or condition that the premises or some part thereof were required for public purposes. If that event occurred, no renewal could be required. But no such condition has arisen, as no part of the premises has ever been required for such purposes. Therefore, the existence of that condition in the lease has no bearing upon the question involved in this case. The covenant for renewal must be considered as perpetual, absolutely binding the city until some portion of the land upon which the plaintiffs' building stands shall be actually required for public purposes by the city of New York. The plaintiffs, under the transfer of the original lease and the renewals thereof, became and continue to be the owners of the building erected upon the lot in question. As such lessees and owners they are entitled to recover such damages as they have sustained by reason of their loss of the easements of light, air and access appertaining thereto, without regard to any right which the city, as the owner of the fee in the lot, may possess for any injury to its reversion in the land. The city never had any title to or interest in the building. In readjusting the rent to be reserved for the bare land, the building certainly played no part. If the existence of the defendants' railroad reduced the value of the use of the building, or the value of the building itself, what had the city to do with that? Absolutely nothing. All the city had to deal with was the adjustment of the rent for the mere naked lot, and it had no interest whatever in the question of the reduction in value of or injury to the building owned by the plaintiffs. Under such

circumstances, how can it be properly said or presumed that the city reduced the rental of its property by an amount equal to the depreciation of the plaintiffs' building or its use, to which the city had no title and in which it had no interest? It may be, as to which we have no information, that the rent of the bare lot was affected by the defendants' road, and that that fact may have been considered in readjusting the rent. But if so, how does it bear upon the independent rights of the plaintiffs as the owners of the building? The city could not and did not attempt to rent the building to the plaintiffs, nor could it affect their rights to recover for the injury they sustained as owners with the right to maintain it at that place. It seems perfectly clear that the question of the readjustment of the rent to be paid by the plaintiffs for the use of the bare land has practically no bearing upon or connection with their right to maintain an action for the injury they have sustained to the use of the building, to which they have an absolute title and which they have the right to maintain where it is located. This case seems to fall clearly within the general principles enunciated by Judge GRAY in the last *Kernochan* case. There is no claim or pretense that the plaintiffs are entitled to recover for the injury to the owners' reversion. But the recovery was based upon the diminution of the enjoyment by the lessees of a building owned by them, in which the city had no interest and as to which they were deprived of the easements to which they were entitled and which were transferred to them by mesne conveyances from the original lessee, to whose rights they succeeded. These considerations lead to the conclusion that the judgment appealed from was right and that it should be affirmed.

Several other questions were raised upon the argument, but there are none which seem to require any special consideration. Hence, I recommend an affirmance of the judgment, with costs.

GRAY, J. (dissenting). The lease was made by the city of New York for twenty-one years from May 1, 1872, to

Francis A. Leggett, and by mesne assignments, in 1882, these plaintiffs became the assignees thereof and owners of the building thereon. At that time, the elevated railroad had been constructed in the street, with the express consent of the city of New York, and it had been in operation for some two years previously. At the expiration of the leasehold term of twenty-one years, in 1893, the lease of the premises, under a covenant in the lease, was renewed by the city to the plaintiffs. Thereafter, in 1897, this action was commenced, in which plaintiffs prayed judgment for an injunction against the defendants and for damages. The plaintiffs were successful and their judgment was affirmed by the Appellate Division by a divided court; the majority of the learned justices holding that the doctrine of *Kearney* v. *Metr. Elevated Ry. Co.* (129 N. Y. 76), supported the plaintiffs' right of action. The dissenting justices held that the case came within the doctrine of the opinion in *Kernochan* v. *Manhattan Ry. Co.* (161 N. Y. 339).

I agree in the latter view and I think that this judgment should be reversed. In the *Kearney* case, relied upon in the prevailing opinion below, the lease had been made in 1863 and Kearney became the assignee of the lease and the owner of a building theretofore erected upon the leased property, in 1866; which was prior to the construction of the elevated railway. The renewal of that lease, at a rental fixed upon an appraisement, in 1884, was held not to affect Kearney's right to recover damages. He had been the absolute owner of the building since 1866 and we could perceive no reason why he was not entitled to receive such sum as represented its diminished rental value in consequence of the construction of the defendant's railroad. A distinction between that case and that of *Witmark* v. *N. Y. El. R. R. Co.*, (149 N. Y. 393), and this is apparent, in that these plaintiffs took an assignment of the lease, and became the owners of the building, after the railroad had been constructed and under a lease, which recognized the possible devotion of some part of the property to public purposes. It seems to me that when the plaintiffs thus

acquired the property, in the existing situation of an elevated railroad in operation in the street and with that situation legitimately created by the city, as the owner of the fee, they were in no position to assert that they were damaged. The effect of the city's consent to the erection of an elevated railway was to grant to the defendants its interests in the street, whether as owner of the fee of the street, or as owner of the abutting property. It was so held in *Herzog* v. *N. Y. Elevated R. R. Co.*, (76 Hun, 486), and the decision of the Appellate Division was affirmed here on the opinion below. (151 N. Y. 665.) The plaintiffs acquired their property with, at least, constructive notice of the fact that the street easements had been lawfully granted to the defendants and when the renewal lease was made, in 1893, the lessees knew that the property was shorn thereof. (*White* v. *Manhattan Railway Co.*, 139 N. Y. 19.) It is to be presumed that they paid for leasehold and building at a value as affected by the situation.

The principle of the decision in the *Kernochan Case*, (*supra*), applies, and the presumption obtains, that when the rent, upon the renewal of the lease, was fixed by agreement between the plaintiffs and the city authorities, its amount was fixed with reference to the changed situation in the street. Hence the plaintiffs did not suffer damage in that respect. In that case, the lease provided for periodical readjustments of rent during the running of the term and it was held that the arbitrators, in determining the rental, would, naturally, be presumed to have appraised the value of the land as it stood; having in consideration all the facts relating to its situation and to the facilities for its enjoyment, with an elevated railroad in the street in front of it, as a permanent structure. The prior case of *Kernochan* v. *N. Y. Elevated R. R. Co.* (128 N. Y. 559), had decided that when a party has leased after the construction of the elevated railroad, the presumption is that the rent reserved in the lease was governed by the actual situation of the property.

If the burden of the elevated railroad had been greatly increased, that might support the action to recover, *pro tanto*,

for the damages to the abutting property, but I have been convinced that the plaintiffs should not be allowed to maintain their action to the broad extent of their demand for relief. I do not think, under the circumstances of this case, and in the absence of any appropriate language, that we can, or should, in fairness, or justly, hold that these plaintiffs took over, upon the assignment of the lease, some claim of their assignor against the defendants. We should hold that they paid for the leasehold property a price, which was governed by the actual value, as affected by existing and legitimate conditions.

HAIGHT, CULLEN and WERNER, JJ., concur with MARTIN, J.; PARKER, Ch. J., and O'BRIEN, J., concur with GRAY, J. Judgment affirmed.