## PENTLAND vs. KEEP.

EASEMENT.   *(1) When grant of right of way binds purchaser of the servient estate.   (2, 3) When such purchaser not chargeable with constructive notice.   (4, 5) Conditions of easement by prescription.*

1. Where the owner of several adjacent lots, in a conveyance of one of them, grants a right of way thereto (not being a way of necessity) over the next adjoining lot, such grant is inoperative as against one who, without actual or constructive notice thereof, purchases such adjoining lot.

2. Where the deeds of the two lots are made and delivered on the same day, and are subsequently both recorded on the same day, and there is no such use of the property at the time as would charge a purchaser of either of the lots with notice of the existence of an easement therein, such purchaser takes without *constructive* notice of the easement so granted.

3. A deed from W. to H. referred to a deed that day executed by W. to R., and reserved "the right of way conveyed in said deed to R., his heirs and assigns." W. had that day executed a deed to one M. of a lot adjoining that conveyed to H., which deed purported to convey to M., his heirs and assigns, a right of way across said last named lot; and it is claimed that this is the deed improperly described as executed to R.; but there is no proof that H. knew that fact, nor that he was otherwise chargeable with notice of the grant to M. *Held*, that the rights of H. and those succeeding to his title are not affected by such grant.

4. To establish an easement by *prescription*, it must be shown, not only that it has been enjoyed uninterruptedly the requisite length of time, but that the user was *adverse*, and not merely permissive.

5. No user of land by a third person, not injurious to the reversion, will create an easement therein as against the owner of the fee, where, during the whole period of such user, the land has been in the possession of a tenant for life or years.

APPEAL from the Circuit Court for *Rock* County.

The plaintiff and the defendant are the owners respectively of adjoining lots in the city of Beloit. The plaintiff claims a right of way over the lot of the defendant to his lot, which he alleges the defendant has obstructed or encroached upon by erecting a stone building on her lot, in 1874, covering a portion of such way. This action is to recover damages for, and to obtain an abatement of, the alleged obstruction.

In his complaint the plaintiff claims such right of way by grant, reservation and prescription. The answer of the defendant (among other things not necessary to be stated) contains a general denial.

The facts found by the circuit judge, so far as it is necessary to state them, are as follows: On the 13th of December, 1845, one James Wadsworth was the owner in fee of a part of block 48 in the village (now city) of Beloit, described by metes and bounds; and on that day he conveyed portions thereof in severalty, by separate deeds, to Otis Manchester, to James Hanchett and to Alvin B. Carpenter. The diagram herewith printed, of the lands conveyed or affected by these deeds, will assist to a correct understanding of them. The subdivisions of Wadsworth's premises, as shown in the diagram, do not appear in the recorded plat of Beloit, nor in any of the conveyances in his chain of title, but are first mentioned in the three deeds executed by him to Manchester, Hanchett and Carpenter.

When these three deeds were executed, a block of four stone stores was in process of erection on the premises, fronting on Turtle or State street and covering the whole front of the lots designated as store-lots numbers 1, 2, 3 and 4, with partition walls on the lines of such lots. The store on the lot desig-

Pentland vs. Keep.

nated as "store-lot No. 1," was ninety feet deep, and those on the others were each fifty feet deep.

The deed to Manchester conveyed to him by metes and bounds the lot designated as No. 2 — twenty-three feet front on Turtle street, and seventy feet deep,— "together with the unobstructed right of way in a lane eleven feet wide, leading from Turtle street south of store No. 4, and running eastwardly perpendicular to Turtle street seventy feet, thence northerly parallel to Turtle street and distant therefrom fifty feet, twenty feet wide, until it strikes the lot hereby conveyed."

The deed to Hanchett conveyed to him in like manner store-lot No. 3, also seventy feet deep. This deed contains the following grant and reservation: "Together with the right of way in the lane south and east of store No. 4 in said block, particularly described in a deed this day executed by the said Wadsworth to John N. Reynolds; *and saving and reserving* the right of way conveyed in said deed to said Reynolds, his heirs and assigns, according to the plat indorsed hereon." There is a plat indorsed on such deed, substantially like the above.

The deed to Carpenter conveyed store-lot No. 4, also by metes and bounds, but only to the depth of fifty feet; and granted "the right of way in a lane eleven feet wide leading from Turtle street, south of store No. 4, and running easterly at right angles with Turtle street seventy feet, thence northerly parallel to Turtle street and distant from the north line of said lane twenty-three and one-fourth feet, and twenty feet wide."

In June, 1849, Wadsworth conveyed to Manchester all his remaining interest in the land included within the lines of the above plat. This conveyance included store-lot No. 1, and the fee of the land over which the right of way was granted to Carpenter by Wadsworth in the conveyance of December, 1845.

In July, 1855, Manchester conveyed store-lot No. 2 to one Foss, but did not in his deed thereof expressly grant any right of way thereto. That deed contains the following reservation:

"Reserving a right of way across said lot, twenty feet in width, back of and adjoining the store on said lot, to be used in common by the parties, their heirs and assigns, with other persons interested therein."

The plaintiff became the owner of lot No. 2 by purchase at a sale thereof in 1865, pursuant to a judgment for the foreclosure of a mortgage executed by Foss, and succeeds to all the interest therein conveyed to Foss by Manchester.

In 1848, Hanchett conveyed lot 3; and by several mesne conveyances the defendant became the owner thereof in fee in 1871. All of such conveyances except the last, contain the same reservation of a right of way in favor of John N. Reynolds as is contained in the deed from Wadsworth to Hanchett executed in 1845. The conveyance by her immediate grantors to the defendant contains no reservation of any right of way.

It does not appear that either of the grantees in the three deeds executed by Wadsworth in 1845 had any notice of the contents of the deeds to the other two grantees, other than such as may be inferred from the contents of the deed executed to himself. When those deeds were executed, the lands on the east adjoining the lots thereby conveyed were uninclosed, and remained so for several years thereafter.

From the time such deeds were executed in 1845, until 1874, the lanes marked on the above plat were used as a way from Turtle or State street to the rear of the store on lot 2, by the occupants of such stores.

In 1874, the block of stores on the lots in question was destroyed by fire. The parties immediately proceeded to rebuild stores on their respective lots. The defendant built her store sixty feet deep, or ten feet deeper than the corresponding store in the original block; and in addition she constructed a cellar-way or entrance in the rear of her store five and a half feet wide. She thus occupied a considerable portion of the lane through which the plaintiff claims a right of way to his store, which is the obstruction complained of in this action.

Store-lot No. 3, since it was conveyed by Wadsworth to Hanchett in 1845, has always been occupied by tenants of the respective owners thereof, and not by such owners in person.

The foregoing facts appear from the pleadings, evidence, and findings of the circuit judge. The judge found therefrom that the plaintiff had no right of way, either by grant, prescription or otherwise, over the defendant's lot.

The plaintiff appealed from the judgment of the circuit court dismissing his complaint with costs.

The cause was submitted on the brief of *Pliny Norcross* for the appellant, and that of *Winans & McElroy* for the respondent.

For the appellant it was contended, 1. That the establishment of the alleys by the common owner, the plat thereof, the reference to them in the several deeds, and the open and uninterrupted use of them by the owners of all the lots for twenty-six years, from 1845 to 1871, was sufficient to show that the occupants of lot No. 2 had a right of way as claimed over lot No. 3. The deed from Wadsworth to Hanchett reserves a right of way described in a deed to Reynolds, and no such deed was given; but the evidence shows clearly that the deed to Manchester was meant, and also shows how the mistake arose; and the plat indorsed on Hanchett's deed was sufficient to show that the alley was laid over lots 3 and 4. This establishment, plat and reference by the owner of all the land, fixed the alley, and it became appurtenant to lot 2, and would pass by a grant of that lot, even if no special reference were made to it, and although it were not necessary to the lot. Washb. on Easem., 35, and cases cited. Upon dividing a heritage, privileges then existing in favor of one lot and against another have been held to pass as appurtenant. Washb. on Easem. (3d ed.), 51. So when the owner of a heritage, consisting of several plats, has arranged and drafted them so that one derives a benefit from the other of a continuous and obvious character, and sells one without mention of

such advantage or burden, there is an implied agreement that the advantage and burden shall continue as before the separation of the title. Washb., 58, 60; *P. R. R. Co. v. Jones*, 50 Pa. St., 424; *Pettingill v. Porter*, 8 Allen, 1; *Leonard v. Leonard*, 7 id., 277–283; *Seymour v. Lewis*, 13 N. J. Eq., 439. In *Pyer v. Carter*, 1 Hurl. & Nor., 916, where the owner of two houses sold the one which had a hidden drain from it under the cellar of the other, without mentioning such drain in his deed, it was held that the deed conveyed a right to the drain, upon proof that the owner of the servient estate knew of the drain. This case is quoted with approval in 7 Allen, 277; 18 N. Y., 48; and 47 Pa. St., 243; while in 46 N. Y., 439, the court suggest that it should be followed only in cases where the easement is "open and apparent." See also *Lampman v. Milks*, 21 N. Y., 505; 47 id., 3; 30 Iowa, 386; 23 id., 588. 2. The continued use of the alley by the plaintiff and his grantors from 1845 to 1871, and the acquiescence of the owners of lot 3 in the servitude, although it was injurious to them, established a title in the plaintiff by *prescription*. *Odiorne v. Wade*, 5 Pick., 421; *Williams v. Nelson*, 23 id., 141; *Borden v. Vincent*, 24 id., 301; *Powell v. Bagg*, 8 Gray, 443; *Rooker v. Perkins*, 14 Wis., 79; *Smith v. Russ*, 17 id., 227. The burden was upon the defendant to show that the user was by license or permission. *Perrin v. Garfield*, 37 Vt., 304; *Curtis v. Angier*, 4 Gray, 547; *Barnes v. Haynes*, 13 id., 188; *Brace v. Yale*, 10 Allen, 441; *Munion v. Creigh*, 37 Conn., 462; *Hammond v. Zehner*, 21 N. Y., 118; *Drewett v. Sheard*, 7 C. & P., 465. It was not necessary that the owner of lot 2 should assert his claim to the right of way in words, nor that the owner of lot 3 should admit in words that he knew of the adverse use and claim; but twenty years of uninterrupted adverse use, with knowledge and acquiescence of the owner of the land in which the use was enjoyed, in the absence of any evidence of license, is sufficient proof of the existence of the easement (Washb. on Easem., 160; *Smith*

Pentland vs. Keep.

*v. Miller*, 11 Gray, 148; *Blake v. Everett*, 1 Allen, 248; *Gray v. Bond*, 2 Brod. & Bing., 667); and this principle will hold good, although the servient estate was occupied by tenants. *Cross v. Lewis*, 2 Barn. & Cress., 686; *Mebane v. Patrick*, 1 Jones Law (N. C.), 23.

For the respondent it was argued, 1. That the plaintiff never acquired a right of way across lot 3 *by deed*. (1) The deed of lot 3 from Wadsworth to Hanchett contains no *reservation* of a right of way over that lot in favor of any person or parcel of land. The apparent reservation in that deed in favor of Reynolds in no way helps the plaintiff. It was either personal to Reynolds and his heirs and assigns, or appurtenant to a parcel of land conveyed to him. But such parcel of land is not described in the Hanchett deed, and we know that it was not lot 2, for that was on the same day conveyed to Manchester. Moreover, Reynolds testified that he never negotiated for or received a deed from Wadsworth of any land in this block. Hence the reservation was a nullity. (2) Hanchett's rights were not affected by the *grant* of a right of way in the deed to Manchester. There is no evidence that Hanchett knew of any sale of lot 2 to Manchester, when he accepted the deed for lot 3; nor is there any evidence that the deed to Hanchett was not delivered before that to Manchester. In the absence of any evidence as to the order of delivery of the three deeds executed by Wadsworth on the same day, the law presumes them to have been simultaneously delivered; and there is no presumption that either grantee had notice or knowledge of the other two deeds. *Johnson v. Jordan*, 2 Met., 234; *Collier v. Pierce*, 7 Gray, 18; Washb. Easem. (3d ed.), 616. (3) Even if Manchester acquired the easement here claimed, he did not convey it by his deed to Foss. It did not pass to Foss by virtue of the term "appurtenances" in that deed, because that term only covers ways of *necessity*, and the way here claimed is only one of convenience. 3 Washb. R. P. (3d ed.), 341, 627; *Carbrey v. Willis*, 7 Allen, 364; *Parker*

*v. Bennett*, 11 id., 388; *Grant v. Chase*, 17 Mass., 443; *Whalley v. Thompson*, 1 Bos. & Pul., 371; *Mabie v. Matteson*, 17 Wis., 1. Foss mortgaged the premises by the same description, and plaintiff purchased them at the foreclosure sale and obtained a sheriff's deed with the same description; and such mortgage and deed were insufficient to convey the easement claimed, even if Foss had acquired it. (4) If the easement claimed ever existed in favor of lot 2, it did not pass to Foss, because it ceased to exist as a legal right in 1849, when Manchester acquired title from Wadsworth to all the land which the latter then owned in the plat. This purchase embraced the fee of the land covered by the ways in question, especially that part south and east of store-lot 4, as the latter lot had only been conveyed to a depth of fifty feet, while lots 2 and 3 had been conveyed by Wadsworth to the depth of seventy feet. The unity of title and possession in Manchester, thus created in store-lots 1 and 2 and the ground over which the easement is now claimed, terminated the easement, if any previously existed, in favor of Manchester and of said lots 1 and 2. The subsequent conveyance of lot 2 to Foss did not revive the easement by express words of grant, nor by any words which the law holds to constitute such a revivor. See authorities last cited. 2. That plaintiff had not acquired the easement claimed *by prescription*. (1) While Manchester held the title to and possession of all the land in the plat except store-lots 3 and 4, he could not acquire any right by prescription over his own land; and none had been acquired before. Deducting this period from the whole time which intervened between the conveyance of lots 2 and 3 by Wadsworth and the partial closing of the way in 1871 here complained of, sufficient time is not left to establish a prescriptive right. Other deductions should be made of periods during which the land was owned by minors or married women, or was occupied by tenants. 2 Washb. R. P. (3d ed.), 278, 296; Washb. Easem. (3d ed.), p. 150, sec. 51, and p. 158, sec. 61;

*Melvin v. Whiting*, 13 Pick., 184; *Watkins v. Peck*, 13 N. H.,
360; *Mabie v. Matteson, supra.*

LYON, J.  We have no question in this case of a way of ne-
cessity, as in *Dillman v. Hoffman*, 38 Wis., 559; for the
store of the plaintiff fronts upon a public street, and access to
it is not dependent upon a way across the defendant's lot.
Hence, if the plaintiff has a right of way to his store over the
lot of the defendant, such right must rest in express grant or
in prescription.

1. Has he such right by virtue of a valid, effectual grant?
It may be assumed for the purposes of the case, that if there
was then a right of way across store-lot No. 3, appurtenant to
lot No. 2, the conveyance of the latter lot in 1855 by Manches-
ter to Foss (to whose rights the plaintiff has succeeded) car-
ried with it such right of way, although the same was not
expressly granted in that conveyance.  This is assumed, not
decided.

The conveyance of store-lot No. 2 by Wadsworth to Man-
chester in 1845 contains an express grant, in form, of such
right of way.  But such grant is not operative against the de-
fendant unless Hanchett, to whom Wadsworth conveyed lot
No. 3, and to whose rights the defendant has succeeded, had
actual or constructive notice thereof, or unless there is a cor-
responding reservation of a right of way to lot No. 2 over lot
3 in such conveyance to Hanchett.

The deeds from Wadsworth to Manchester and Hanchett,
respectively, were executed on the same day — December 13,
1845, and both were recorded December 29th in the same year.
When they were executed, there was no such use of the lanes
as would charge a purchaser of one of the lots with notice of
the existence of an easement therein.  There is no evidence
tending to show that Hanchett had actual notice that a right
of way had been or was about to be granted to Manchester
across lot No. 3.  We conclude, therefore, that Hanchett had

no notice either actual or constructive that Wadsworth had granted a right of way across lot No. 3.

This brings us to the question, Did the reservation in Hanchett's deed of a right of way across lot No. 3 enure to the benefit of Manchester or of the owner or owners of lot No. 2?

We are unable to see how it could so operate. It is a reservation in general terms of a right of way conveyed to Reynolds in a deed executed to him on the same day by Wadsworth. It does not specify the land or lot so conveyed to Reynolds; neither does the plat to which reference is made. Reynolds' name does not appear upon the plat, and there is nothing on the face of the plat or in the deed to Hanchett to show that the reservation was for the benefit of Manchester, or that the right of way reserved was a right appurtenant to lot No. 2.

But it is said that the evidence shows that the name of Reynolds was inserted in the reservation in Hanchett's deed by mistake instead of the name of Manchester. We have no reason to doubt that such is the fact. Reynolds was engaged in business with Manchester, and acted as his agent in purchasing for him lot 2 of Wadsworth. The mistake is thus readily accounted for. But it does not follow that the mistake can now be rectified, or that the rights of Hanchett or his grantees can be affected by it. Had Wadsworth commenced an action against Hanchett, while the latter was still the owner of lot No. 3, to reform the conveyance by inserting therein a reservation of a right of way in favor of Manchester instead of Reynolds, it would have been incumbent upon Wadsworth to prove in the first instance that Hanchett knew that a reservation in favor of Manchester was intended in the original deed. Failing to make this proof, he would inevitably have failed to obtain the relief sought.

Had Manchester attempted by legal proceedings to enforce the right of way granted to him by Wadsworth over Hanchett's lot, it would have been essential to his case to show

that Hanchett had notice of such grant when he took a conveyance of the lot from Wadsworth. It does not appear that either Wadsworth or Manchester could have made the required proof; for, as already observed, the evidence in the present case fails to show that Hanchett is chargeable with notice of the grant to Manchester, and it also fails to show that Hanchett knew that the reservation in his deed was intended to be in favor of Manchester instead of Reynolds.

It must be held, therefore, that Hanchett and his grantees took the title in fee to lot No. 3, subject only to the right of way specified in Wadsworth's conveyance to Hanchett; and inasmuch as no right of way in favor of Manchester, or appurtenant to lot No. 2, is specified therein, it follows that the grant of a right of way to Manchester over lot No. 3 was inoperative as against Hanchett, and is inoperative as against the defendant, who succeeds to the rights of Hanchett.

2. Has the plaintiff a right of way by prescription over the defendant's lot?

The learned circuit judge found as facts in the case, that the lanes in question were used as ways by the owners and occupants of the four stores and others, uninterruptedly from 1845 until the trial of the action; but that such use was permissive only, and without any claim of legal right thereto by any person enjoying such use. If the latter finding is supported by the evidence, there is no valid prescription; for, to establish a right to an easement by prescription, it must be shown not only that it has been enjoyed unterruptedly the requisite length of time, but that the user was *adverse*, and not merely permissive. *Rooker v. Perkins*, 14 Wis., 79; *Haag v. Delorme*, 30 id., 591, and cases cited.

It is earnestly argued, however, by the learned counsel for the plaintiff, that the evidence abundantly proves that the user in this case was adverse; but we find it unnecessary to review the finding of the judge in this particular, because we are satisfied that, on another ground, it was correctly held

that the plaintiff failed to establish a right of way across defendant's lot by prescription or user.

Washburn, in his treatise on the law of real property (vol. 2, p. 48; 2d ed., p. 328), speaking of easements acquired by user, says: "Another circumstance essential to acquiring an easement in land is, that the land, during the time of the easement being acquired, should be in the possession and occupation of some one as the owner of the inheritance, who is not under disability to resist the use, and who may be presumed to have made a grant of such easement from his having been at the time of capacity to make it. * * * Thus, if, while the use of that which is claimed as an easement is being had, the land in which it is claimed is in possession of a tenant, it would not give such right of easement against a reversioner." And again, in his treatise on the law of easements and servitudes, the same learned author says: "In addition to what has already been said, it may be stated, with few if any qualifications, that neither a remainderman nor a reversioner can be affected by any use or enjoyment of an easement in or over the servient estate, by way of thereby creating a prescriptive right in respect to the same, while his land is in the possession and occupation of a tenant for life or years."

The doctrine of the text is fully sustained by the cases there cited. Two cases have been cited on behalf of the plaintiff in opposition to this doctrine. These are *Cross v. Lewis*, 2 B. & C., 686, and *Mebane v. Patrick*, 1 Jones (N. C.), 23. In the first case, a user of an easement for many years before the tenancy of the servient estate commenced, was proved. It was a case of ancient lights. ABBOTT, C. J., said: "But upon this evidence it must be taken that they were ancient lights, *existing before Mrs. P's tenancy commenced.*" That is, the right to the easement was established by user before the servient estate was occupied by a tenant.

In the North Carolina case it was held, apparently without argument or citation of authority, that the user upon which

the claim of a right of way by prescription was founded, was sufficient to establish the prescription, although when it commenced the servient estate was in the possession of a tenant. This seems to have been assumed rather than determined. The real point decided was, that when an adverse user sufficient to found a prescription had once commenced to run against the owner of the servient estate, not under disability, the fact that such owner was under a disability (in that case he became insane) would not stop the running of the prescription.

These cases do not shake the doctrine laid down by Washburn, as applied to a case where the owner of the servient estate is under disability during the whole time of the user.

The judge found that store-lot No. 3, ever since Wadsworth conveyed it to Hanchett in 1845, has always been occupied by tenants of the respective owners, and not by the owners in person. The correctness of this finding does not seem to be questioned.

The user of the right of way over the lot was not an injury to the reversion for which Hanchett or any of his grantees could have maintained an action. Neither could he or they have gone upon the lot and closed up the way without infringing the rights of the tenant in possession. Hence they were always under disability, always powerless to resist the use of the lot for the purposes of a way to lot No. 2. Such being the case, the rule above stated applies, and the user, although for thirty years, will not support the claim of an easement by prescription.

The foregoing views are decisive of the case, and we are relieved from the duty of determining other questions presented by the record and which have been ably argued by the respective counsel.

*By the Court.* — The judgment of the circuit court is affirmed.