This subdivision deals with the right of a corporation which has bid for the right to build the railroad itself, under the provision in the act of 1891. The act, as it was passed in that year, did not in any wise contemplate the construction of the railway by and for the city, and the powers of the commission under the original act were mainly the laying out of a route and the designation of a corporation organized for that purpose under the act which might construct the railway. Under the provision of the amendment of 1894, however, the subway in whose construction the plaintiffs are now assisting is being built for and by the city, and the rapid transit commission is at the head of the enterprise, pursuant to the larger powers granted by the amendments of 1894. It must be apparent, therefore, that the provisions of subdivision 5 of section 24 but related to a corporation organized under the act for the purpose of building the railway itself, and cannot by any implication whatever refer to the rapid transit commission, which is what such a corporation never could have been, namely, a properly constituted and distinct municipal agency.

The order continuing the injunction during the pendency of the action should, therefore, be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.

---

(120 App. Div. 684)

BURKE v. MANHATTAN RY. CO. et al.

(Supreme Court, Appellate Division, First Department. July 15, 1907.)

EASEMENTS—GRANTS—PRESCRIPTION—PRESUMPTIONS.

Where a railroad was built in a street, and subsequently an action by the owners of the fee of land abutting on the street to restrain the railroad from maintaining and operating its road in the street was settled, the owners conveying to the railroad all their interest in the street, the recognition by the railroad of the interest of the owners was not a recognition of the rights of tenants of the property, nor did it tend to rebut the presumption of a grant by the tenant of his interest in the street arising from adverse possession by the railroad for 20 years.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Easements, § 84.]

Appeal from Special Term, New York County.

Action by William J. Burke against the Manhattan Railway Company and others. Judgment for plaintiff, and defendants appeal. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

Julien T. Davies, for appellants.
George C. Lay, for respondent.

INGRAHAM, J. The action was brought to restrain the maintenance and operation of the elevated railroad in front of the property No. 203 Third avenue. The elevated railroad was constructed and the operation of the road commenced in August, 1878. This action was commenced on July 28, 1902, over 20 years after the construction and operation of the railroad. The property in question was in the year 1844 owned by Peter Girard Stuyvesant, who on August

1, 1844, leased it to one John Pickersgill for the term of 21 years, with a covenant for a renewal. On June 30, 1865, this lease was renewed by Hamilton Fish, in whom the fee of the property had vested, for 21 years from August 1, 1865. The leasehold was subsequently assigned, and in 1886 was vested in the estate of Thaddeus G. Curtis, when a new term was then granted for 21 years from August 1, 1886, with a covenant for a renewal. That leasehold was subsequently assigned to the plaintiff, who on the 28th of July, 1902, as lessee of the premises, commenced this action.

It was proved on the trial that on March 16, 1894, Hamilton Fish and others, who were the owners of the fee of the property, commenced an action to restrain the defendants from maintaining or operating the railroad structure then existing on Third avenue in front of the premises in question, on the ground that the plaintiffs were the owners of the fee of the premises and that the maintenance of the structure and the operation of the railroad was a trespass and appropriation by the defendants of plaintiffs' easements in the abutting avenue. In that action the defendants interposed an answer, in which they alleged no title to the street in the defendants, but alleged that the defendant railroads were duly incorporated and authorized by law to construct, maintain, and operate a railroad in the street in front of the said premises. This action being at issue, the plaintiffs then united in a conveyance or release to the defendants, which recited that Hamilton Fish died seised and possessed of the premises in question on the 7th of September, 1893, leaving a last will and testament whereby he devised this property, with others, to his children and to trustees in trust for two grandchildren; that appurtenant to the said premises there are claimed to be certain rights or easements to the enjoyment of the street adjacent thereto as an open public street and as interest or estate in the lands forming the bed of the street; that adjacent to the lands and premises above described the parties of the last part (the New York Elevated Railroad Company and the Manhattan Railway Company, the defendants in this action) were maintaining and operating an elevated railroad constructed by them, or one of them, or the predecessor of one of them; and that the parties hereto desire and intend, for the consideration thereinafter expressed, to settle and adjust all claims and causes of action against said companies, or either of them, which had arisen to the said parties of the first part, or which might thereafter arise to the said parties of the first part or their grantees, by reason of the construction, maintenance, and operation of the said railroad adjacent to the said premises, and the owners of the reversion, in consideration of the sum of $5,412, released the New York Elevated Railroad Company and the Manhattan Railway Company from all claims, damages, and cause or causes of action which existed in favor of the parties of the first part, or any of them, including all claims, damages, and cause or causes of action for depreciation in the value of the said premises, and loss of rents or rental value, and annoyance or injury to the owner or occupant, and interference with the use of the said premises, or the easements appurtenant to the same, produced by the construction, maintenance, and operation of the elevated railroad. And there was further granted

and conveyed to the New York Elevated Railroad and Manhattan Railway Companies, their successors or assigns, "all the right, title, and interest of the said parties of the first part, and which they have power to convey, in said Third avenue and Eighteenth street and the lands forming the bed thereof, and the easements therein, appurtenant to said premises, which are or may be necessary for the construction, maintenance, and operation of an elevated railroad in said street, as the same is now constructed, maintained, and operated, except as hereinafter stated."

The question presented on this appeal is whether this action by the owners of the fee, and the settlement by the defendants, and the acceptance of the conveyance from the owners of the fee, is an answer to the claim that by the adverse possession of 20 years a presumption arises of an execution by the tenant of a grant or release of his interest in the street. In Hindley v. Manhattan Railway Company et al., 185 N. Y. 335, 78 N. E. 276, it was held that from the adverse use and enjoyment of an easement in those streets by the defendant corporations there was a presumption of a grant, that "prescription was initiated by entry pursuant to legislative and municipal grants," and that the corporation had acquired by prescription a right to maintain the structure in the streets, forever. In speaking of the legislative authority under which the defendants have appropriated the streets, it was there said:

"What did the grants in question purport to do? Upon their face they gave the defendants authority to erect, maintain, and operate an elevated railroad in the street; and this is all they have ever done therein. These grants were apparent authority to appropriate the easements of the abutting owners to the extent that such a structure and the use thereof necessarily involved. The authority, although apparent only—for, of course, the city had no power to transfer private property—was sufficient for the claim of prescriptive right to rest upon. * * * The grant purported to cover what the company entered upon and took possession of in 1879, and continued in undisputed possession thereof, so far as the plaintiff is concerned, until the commencement of this action in 1901."

It was held that the entry was adverse, that "they did it under color of title measured by the grant and under claim of title measured by the user," and that both upon principle and authority the doctrine of prescription applied to the defendants' railroad. It was also held that evidence that the defendants had made settlements with other property owners upon the same street as that upon which the plaintiff's property abutted was incompetent—

"because there was no privity between the plaintiff and any land owner with whom a settlement was made. It was received to meet the defendant's claim of prescriptive right, but it had no bearing on that defense, for an adjustment with A. does not tend to destroy the presumption of a grant from B. The easements appurtenant to A.'s lot are separate and distinct from those appurtenant to B.'s lot, and there can be no community of interest in the easements, unless there is a like interest in the lots themselves. * * * The question in every case is whether the owner of the particular lot under consideration has actually released the easements appurtenant to that lot, or whether the presumption of a release arises from the lapse of time and the other facts upon which the doctrine of prescription is founded."

In this case we have an action commenced by the owner of the reversion, which was at that time subject to a lease for a term of years

held by the plaintiffs; and it is claimed that the defendants, by accepting a grant from the owners of the fee, acknowledged that they were appropriating and using an interest in the street appurtenant to the property of which plaintiff was a tenant without right, which rebuts the presumption of the grant from the tenants.

The nature of an estate of a tenant in real property and his relation to a trespasser upon a portion of the leasehold estate has been discussed in cases relating to an injury inflicted upon the leasehold property by the construction and maintenance by the defendants of its elevated railroad structure in the streets in the city of New York. In Kernochan v. Manhattan Railway Company, 161 N. Y. 339, 55 N. E. 906, which was an action brought by the owner of the reversion, the interest in leasehold property of the lessee and reversioner was clearly distinguished; Judge Gray saying:

"The urban easements, belonging to property abutting upon the streets, are the rights that one's windows should not be darkened, that the free enjoyment of pure air should not be substantially interferred with, and that the free and usual access thereto should not be impaired. The value of property is affected as these rights are taken or substantially impaired. As between lessor and lessee, the injury from this technical trespass is not the same. The former has his remedy for any injury sustained to his reversionary right, and, as well, in a case where the rent to him is presumably lessened from what it would have been in a normal condition of things. He may recover for any loss occasioned to him from the value of the use being incumbered by the elevated railroad in the street. The lessee, or tenant, has his remedy for any injury occasioned to him, according to the circumstances of his hiring. If the hiring preceded the construction of the elevated railroad in the street, and is for a term of years at a fixed rental, he is entitled to recover for any injury occasioned thereby, to the extent that his enjoyment and use of the property are affected and the rental value thereof to him is diminished. If he leases after the construction of the elevated railroad, the presumption is that the rent reserved in the lease was governed by the actual situation of the property, and the right to recover damages is vested exclusively in the lessor. The lessee or tenant may also, conceivably, have a cause of action against the elevated railroad company, which is not based upon the rental value of the property, as for a temporary or casual trespass. * * * If the lessor is entitled to recover damages for a diminished rental value of the premises, the lessee's or tenant's right also to recover damages must naturally rest upon a different ground, and the case must be one where he is able to show that he has suffered an injury to his use which is distinct in its nature from that which the lessor suffers."

In Storms v. Manhattan Railway Company, 178 N. Y. 493, 71 N. E. 3, 66 L. R. A. 625, the right of a tenant who held under a lease, which was the renewal of a lease made prior to the construction of the elevated railroad, was considered. After citing this quotation from the opinion of Judge Gray in the Kernochan Case, supra, said:

"The question here is not as to the injury to the rental value of the fee of the mere naked land, but relates to the building, the title to which rests in the plaintiffs, and the action is to recover for their injury to the possession and enjoyment of such building under their title and right to maintain it under the lease. This claim is quite different and entirely independent of that of a landlord who merely claims for an injury to his reversion or for diminution in the rental value of the land itself."

It would appear, therefore, that upon the construction of the elevated railroad in the street there was a trespass upon the interest of the landlord in the street affecting his reversion, and a trespass upon the

tenant's interest in the street which affected his right to the use and occupation of the premises, giving to each a separate cause of action against the trespasser to recover for the damages caused by the trespass and the right to apply to a court of equity to restrain the continuing trespass. These actions could be maintained separately to enforce the separate and distinct rights in the street which had been appropriated by the defendants. Either party by a grant to the defendants could have released or conveyed his interest in the street so as to vest such interest in the defendants, without at all affecting the right of the other party to maintain an action to enforce his' rights or recover damages for the trespass. This necessarily follows from the decision in the Storms Case, supra, where the city of New York, which was the owner of the property, had, after leasing the property, consented to the construction and maintenance of the elevated railroad in the street. But, notwithstanding that consent, it was held that the tenant had an independent action, not affected by the release of its landlord, the city, for which he was entitled to recover. It follows, from this, that in the action brought by the landlord, which is relied upon as a recognition of plaintiff's title, there could not be a recovery for the injury sustained by the tenant caused by the trespass, and therefore, as the plaintiff was not in any way affected by the commencement or settlement of that action or by the grant or release given by the landlord, there was no recognition of the plaintiff's right to an interest in the street or to commence or maintain an action to protect it. There can be no question but that a grant by the plaintiff to the defendants, while it would have been a bar to any action brought by the plaintiff to enforce his interest in the street, could not in any way have affected the right of the owners of the reversion to maintain their action for the injury sustained by them. And it would seem to follow that the recognition by the railway company of the interest of the reversioner could not be a recognition of the right of the tenant, or tend in any way to rebut the presumption of a grant or release to the defendant for the interest of the plaintiff or his assignors in the street which had been appropriated or used by the defendants in the construction and maintenance of the railroad.

The principle upon which the presumption of a grant by prescription rests is stated in Lewis v. N. Y. & Harlem R. R. Co., 162 N. Y. 202, 56 N. E. 540, where it was said:

"Prescription rests upon the presumption of a lost deed, after adverse use and enjoyment for 20 years, which has been adopted by the courts as the prescriptive period from analogy to the statute of limitations. * * * What the primary owner loses by his laches the other party gains by continued possession without question of his right. * * * The possession of the defendants was not subordinate to the plaintiff's title, nor permissive as to her, but openly hostile, and necessarily known to be such, to her and her grantors, who made no objection until 1897. It was exclusive, definite, and uninterrupted; for it absolutely excluded all from the part of the avenue occupied by the railroad structures. The obstruction was not out of view or knowledge, but in plain sight of the abutting owners, who, by making no objection, acquiesced in the situation. * * * Under these circumstances the old structures had stood in the street so long that the railroads acquired a prescriptive right to have them stand there forever, so far as the plaintiff is concerned. The situation was the same in effect as if one of her

grantors, while he owned her property, had conveyed to the defendants the right to permanently keep the stone viaduct where it stood and to use it indefinitely for railroad purposes. To the extent of the user by the companies, the plaintiff, through the acquiescence of herself and her grantors, had parted with her rights when the present structure was erected. * * * She could raise no question, except such as she could have raised had she given a deed expressly assenting to the erection of the old structure."

And this presumption was applied, although it was also held that as to the city there was no adverse possession or no presumption of a grant. If the plaintiff or his predecessors in title could, by a grant to the defendants, without joining with the owner of the reversion, authorize the erection and maintenance of this structure, which would be effective to transfer plaintiff's interest in the avenue, I can see no escape from the conclusion that, when the railroad had occupied the street adversely for the period of 20 years, the railroad then acquired by prescription the same right that it would have acquired if it had received from the plaintiff or his predecessors in title a grant to use and occupy the street for the construction and maintenance of its elevated railroad. This was the view taken by this court in Goldstrom v. Interborough Rapid Transit Co., 115 App. Div. 323, 100 N. Y. Supp. 911, where we held that, in an action by a reversioner, the fact that a tenant had, within the 20 years, brought an action against the railroad company, it did not in any way operate to interrupt or defeat the implication of a grant from the landlord. We do not think that the position of the plaintiff that there can be no presumption of a lost deed or grant as against the tenant for life or for years, who has a determinable or limited interest in the lands and is incapable of making a grant in perpetuity, can be sustained. While it is true that the plaintiff, as a tenant for years, could not by grant convey the interests of his landlord, he could convey his own interest, whatever it was. Such conveyance would be effective to transfer to the defendants the plaintiff's right to occupy the street during the continuance of the lease, and there can be no reason why a grant transferring or assuring to the defendants the plaintiff's interest in the street should not be presumed because the plaintiff could not transfer a perpetual right to use it. He had a right entirely distinct from that of his landlord, which he could transfer to the defendant; and the implication from the adverse use of this property for 20 years is that the parties interested in the land have by a grant authorized the use that has existed for that period. And, as it is presumed such a grant did exist, the plaintiff is bound to the same extent as if he or his predecessors in title had actually executed and delivered such a grant.

The cases cited by the counsel for the plaintiff to show that the presumption of a grant of an easement by a tenant for life or for years would not be effective against the remainderman or reversioner do not apply. It is nowhere held that such a grant would not be effective as against the life tenant or the tenant for years. It is clear that the grant that is presumed in consequence of adverse possession could not be more effective than a grant actually produced; and therefore a grant which was presumed from a life tenant could not affect the estate of the remainderman, any more than a grant actually executed by

the life tenant could affect such an estate. It would, however, be as effective as against the life tenant as though an actual grant from the life tenant had been produced. And so in this case, what the law presumes is a grant by the tenant for years; and, as to any claim of the tenant, the presumed grant bars the right of the tenant as against the defendant.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.