### HUMPFNER v. BEERS et al.

(Supreme Court, Appellate Division, First Department.   February 11, 1916.)

SPECIFIC PERFORMANCE &⇒130—RENEWAL OF LEASE—INSERTION OF STIPULA-TION.

A tenant could not have, against the trustees under the will of the deceased landlord, specific performance of the renewal covenant of the landlord, without the insertion by the trustees in the renewal lease of a stipulation that its making and delivery should not operate to create any easement with respect to adjoining lands of the estate not existing prior to the date and delivery of the renewal, which stipulation was intended to prevent the tenant acquiring any right in the other lands through a drain discovered, when the trustees became owners, to exist through such lands from the leased premises.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 424, 425; Dec. Dig. &⇒130.]

Page, J., dissenting.

Appeal from Special Term, New York County.

Action by Adolph Humpfner against Lucius H. Beers and Eli G. Partridge, individually and as trustees under the will of Robert R. Stuyvesant, deceased. From a judgment for plaintiff, defendants appeal. Reversed, and judgment directed for defendants, as demanded in the answer.

Argued before CLARKE, P. J., and SCOTT, DOWLING, SMITH, and PAGE, JJ.

Howard Mansfield, of New York City, for appellants.

Harry N. Selvage, of New York City, for respondent.

SCOTT, J. The action is to compel the specific performance by defendants of a covenant on the part of their testator to grant a renewal lease of certain premises, known as No. 179 Third avenue, in the city of New York. The defendants concede their obligation to execute a renewal lease, which shall contain all the covenants and conditions of the expiring lease, except the stipulation as to terms and

rental; the sole question in dispute arising out of the insistence of defendants upon the insertion in the renewal lease of a clause to the following effect:

"It is expressly covenanted and agreed by the parties hereto that the making and delivery of this lease shall not operate to create any easement over or with respect to the lands of the parties of the first part, lying between the demised premises and Seventeenth street, unless such easement legally existed as against the owners of the fee of said land prior to the date and delivery of these presents."

Robert R. Stuyvesant, defendants' testator, was in his lifetime the owner of four lots on the southeast corner of Third avenue and Seventeenth street, and of two adjoining lots on Seventeenth street. These six lots were in 1871 leased by six separate leases made in renewal of leases made in 1854. The lot of which a lease is now sought to be compelled is the southernmost of the lots on Third avenue, commencing 52 feet south of the southeasterly corner of Third avenue and Seventeenth street. On September 30, 1913, defendants, as trustees, became owners of the three lots on Third avenue lying between Seventeenth street and the lot above described, by virtue of releases executed by the three lessees of the lots. They then learned for the first time of the existence of a covered and concealed drain extending through all four lots on Third avenue in the rear of the buildings erected thereon, and connecting with a public sewer on Seventeenth street. This drain appears to have been constructed at some time by the tenants of the four lots, but there is no evidence that Robert R. Stuyvesant, or these defendants, ever knew of, or consented to, or acquiesced in the construction or maintenance of said drain.

The defendants now find themselves in a dilemma. They concede that the plaintiff is entitled to a renewal lease, which shall contain all the covenants (except as to rental and term) which the expiring lease contains, and one which shall vest in him for the term of the renewal lease precisely the same interest and estate in the land which he enjoys under the present lease; but they insist, and rightly, that he is entitled to no greater or further interest, either in the land to be leased or in other lands belonging to them as trustees. They do not concede that plaintiff has at present any right to insist that the property leased to him shall continue to be drained through the private drain running over other lands not embraced in the expiring lease; but they apprehend that if they now, knowing of the existence of the drain, shall lease to plaintiff the land in question, "with the appurtenances," it may hereafter be claimed that they have granted, for the term of the new lease, the right to continue the use of said drain, thereby imposing a burden upon the other property not included in the lease. For this reason they desire to insert in the lease the purely negative clause quoted at the beginning of this opinion, the effect of which would be to leave the rights of the parties, whatever they may be at present, unaltered and undisturbed by the new lease.

In my opinion the defendants are right in their contention and will fulfill the entire obligation resting upon them by the execution and delivery of a lease in the form in which they finally tendered it; that

is, with all the covenants contained in the expiring lease, plus the clause quoted above. There is no occasion to discuss the obligation on the part of the defendants to execute a formal renewal lease containing the "like covenants, agreements, provisions, and conditions" as were contained in the former lease, for this obligation is clear and is expressly admitted by defendants, and the lease tendered by them does contain all such covenants, agreements, provisions, and conditions. The object of including in the new lease all of the covenants, agreements, provisions, and conditions contained in the expiring lease is to vest in the lessee precisely the same estate and interest in the land that he had under the expiring lease. So much he is entitled to, and no more, for such a renewal lease, there being nothing in it to the contrary, is deemed to be merely a continuance and extension of the former lease. It certainly grants to the lessee the easements and appurtenances as they existed at the time of the original lease, but it is at least arguable that under certain conditions—for example, such as are shown to exist in the present case—it might be held to include something more. At all events the defendants are entitled to be protected against the possibility of having to meet such a claim. It may be that the clause in question is not necessary for their protection. If it is not, no harm can be done by the insertion in the lease, for it is purely negative, and can deprive plaintiff of no right to which he is entitled. It leaves the question of the right to maintain and use the drain precisely where it stands now.

I agree with Mr. Justice PAGE that upon the evidence as it now stands and the findings of the trial court the plaintiff has shown no present right, as against these defendants, to insist upon the right to a continued use of the drain. That question, however, is not raised by the pleadings, and is not necessarily involved in the issues raised thereby, and it does not seem to me to be entirely clear that a judgment to the effect that plaintiff is not so entitled would be res adjudicata in an action brought to test the question. I am therefore of the opinion that the lease tendered by defendants fulfilled every obligation resting upon them, and should have been accepted.

It follows that the judgment appealed from should be reversed, and judgment directed for the defendants as demanded in the answer, with costs in this court and the court below.

CLARKE, P. J., and DOWLING and SMITH, JJ., concur.

PAGE, J. (dissenting). I cannot concur in the opinion of the court. The premises in question are a portion of a tract formerly belonging to Peter Gerard Stuyvesant, and by him conveyed to Robert R. Stuyvesant, and passed to the defendants, as trustees, by virtue of Robert R. Stuyvesant's will, probated April 6, 1906. The lots in question have been leased by the Stuyvesants since 1854 for periods of 21 years by virtue of the provision in the leases that at the option of the lessors it should be renewed for a further term of 21 years at such annual rent as should be agreed upon by the parties, or based upon an appraisement of each lot, considered as an unincumbered vacant lot,

with further provision that in default of giving such renewal the owner of each lot should pay to the tenant the value of the dwelling house referred to in each lease as having been erected on the lot and then standing thereon, or the value of any other dwelling mentioned in the leases of May 1, 1854, which might be on the lot at the termination of the new lease. The lease which was expiring, the renewal of which this action is brought to secure, contained the provision, as did the prior leases:

"That each renewal lease shall contain the like covenants, agreements, provisos, and conditions as are herein contained."

The defendants elected to renew the lease, and notified the plaintiff of the nomination of their appraiser. The plaintiff appointed an appraiser, and these appraisers agreed upon the valuation of the ground, and defendants notified the plaintiff that they would immediately draw up the renewal lease and have same ready to execute at noon on October 29, 1913. The plaintiff attended at the time and place specified, and a lease prepared by the defendants was submitted to him for signature. This lease, in addition to the covenants, agreements, provisos, and conditions like those contained in the lease about expiring, had the following clause inserted therein:

"It being expressly understood and agreed that no easements of any kind or nature are granted over or in any manner affecting the premises of the parties of the first part [the defendants] lying to the north of the premises hereby demised, and that any easements over or in said premises which have heretofore existed or been used may be cut off and terminated at any time without notice to the party of the second part, his legal representatives or assigns."

The plaintiff refused to execute this lease. Another lease was prepared, similar in all respects to the one plaintiff had refused to execute, except that the clause in question was changed to read as follows:

"It is expressly covenanted and agreed by the parties hereto that the making and delivery of this lease shall not operate to create any easement over or with respect to the lands of the parties of the first part lying between the demised premises and Seventeenth street, unless such easement legally existed as against the owners of the fee of said land prior to the date and delivery of these presents."

There is no question raised upon this appeal but that the covenant for renewal, in the lease made by the defendants' testator, was binding on these defendants. The will of Robert R. Stuyvesant granted to the defendant trustees the power to grant renewals of existing leases, and specifically recognized the rights of the existing tenants to renewals. The trustees took the property in trust, subject to the rights of the tenants to the renewal leases. Gomez v. Gomez, 147 N. Y. 195, 200, 41 N. E. 420; Greason v. Keteltas, 17 N. Y. 491, 497. When the defendants exercised their option to renew the lease, and notified the plaintiff to that effect, the mutual rights of the parties were established; each being entitled to insist that the other should execute a formal lease, containing the "like covenants, agreements, provisos and conditions," as were contained in the former lease. Neither party could add other provisos, conditions, or covenants, except by

mutual consent. Doyle v. Hamilton Fish Corp., 144 App. Div. 131, 128 N. Y. Supp. 898; Sanders v. P. B. F. Co., 144 N. Y. 209, 213, 39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757. The appraisers having been appointed and having agreed upon the rental value, the plaintiff was entitled to a decree for specific performance of the agreement for a renewal, and to receive a lease with the like covenants, agreements, provisos, and conditions as were contained in the lease about to expire, and no others.

The defendants desired the new covenant inserted in the lease, for the reason that they had discovered a sewer or covered drain running from this property through other property of the defendants to the north and connecting with the sewer in East Seventeenth street. The leases upon these lots had expired, the defendants having exercised their option not to renew, and had purchased the buildings, and had thus been restored to possession. Evidence of the facts, because of which the plaintiff claimed the right to use this sewer or drain, was received as bearing upon the defendants' defense and counterclaim. Although most of this evidence was received over defendants' objection and exception, they now claim that the legal status of the parties with reference to the sewer should have been determined by the judgment. The learned justice at Special Term has made full findings of the facts with relation thereto, but has drawn no conclusion of law therefrom. The defendants are therefore placed in the embarrassing position of having the question apparently litigated, and although no decision on the law of the case was made, neither was any reservation made of the question to be determined by future litigation.

We think this criticism of the judgment is well founded. The facts being undisputed, and fully before the court, we will give them consideration and determine the question. No right to establish this sewer was ever granted by the landlord. When the leases were made of the lot in question and of the adjoining lots in 1854, the sewer was not in existence, and the right to maintain it did not, therefore, pass as an appurtenance to the leased premises. The sewer was constructed during the term of one of the prior leases, pursuant to a common arrangement between the tenants of the various lots abutting on Third avenue and extending to Seventeenth street. It is clear that the grant of such a right on the premises, made by a tenant for years, could convey no right as against the landlord, and would only affect the estate of the tenant, and be coextensive with the term of the lease of the tenant who made the grant. For the same reason no prescriptive right as against the landlord could arise during the term of the lease. A right by prescription in real property only arises from long and continued use or possession, when a man can show no other title to what he claimed; the law implying a grant from the fact of the continued use or possession without objection. If other title can be shown, no right of prescription can arise; the possession or use will be held to be under the known title. The adjoining tenants could not impliedly grant by prescription a greater right than they could convey by express deed. No prescriptive right against the reversion-

er's estate can be acquired while the property is in possession of a tenant for life or years. Burke v. Manhattan Reg. Co., 120 App. Div. 684, 692, 105 N. Y. Supp. 828; Pentland v. Keep, 41 Wis. 490; Pierre v. Fernald, 26 Me. 436, 46 Am. Dec. 573.

It appears that from the time of the original leases in 1854 until a few months before the commencement of this action all of the lots over which the sewer runs have been in the possession of tenants who were assignees by various mesne assignments of the original tenants who made the leases in 1854. These leases were renewed every 21 years pursuant to clauses in the original leases which imposed upon the landlord the obligation either to renew them for an additional period of 21 years or pay the tenant the value of the buildings erected on the lots. A renewal made pursuant to such an agreement contained in the original lease is not a new and voluntary contract, but merely a continuance and extension of the original lease, and grants to the lessee the easements and appurtenances as they existed at the time when the original lease was made. Storms v. Man. Ry. Co., 178 N. Y. 493, 499, 71 N. E. 3, 66 L. R. A. 625; Kearney v. M. E. R. Co., 129 N. Y. 76, 29 N. E. 70. I am of opinon, therefore, that the plaintiff, on renewing the lease, has only such rights as were included in the original lease of 1854, and any appurtenances or easements added to the premises by agreement with the tenants of the adjoining lots, or while the tenants were in possession of the adjoining lots, are not rights which plaintiff is entitled to enjoy as against the defendants. No right to their use and enjoyment is created by the giving of the renewal lease. What rights may be acquired by prescription, if under the existing circumstances the tenant is allowed to continue the use without objection for the statutory period, it is not necessary for us to consider. That is a matter that is entirely foreign to the issues in this case, and against which the defendants have ample power to protect themselves by seasonable action.

In my opinion, the conclusion of law and the judgment should be modified to conform to this opinion, and the judgment, as modified, affirmed, without costs.